## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | | |
|---|---|---|
| QINGDAO GE RUI DA RUBBER CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00229 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STEEL, PAPER AND FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL AND | ) | |
| SERVICE WORKERS INTERNATIONAL | ) | |
| UNION, AFL-CIO, CLC, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
ASHLANDE GELIN
Attorney
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230

SOSUN BAE
Senior Trial Counsel
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 503-7568
Fax: (202) 305-7644
Email: Sosun.Bae@usdoj.gov

May 22, 2023

Attorneys for Defendant

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | | |
|---|---|---|
| QINGDAO GE RUI DA RUBBER CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-00229 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STEEL, PAPER AND FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL AND | ) | |
| SERVICE WORKERS INTERNATIONAL | ) | |
| UNION, AFL-CIO, CLC, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment on the agency record, defendant's and defendant-intervenor's responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED; and it is further

ORDERED that the Department of Commerce determination at issue in this action is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.


Dated:_____                    _____
      New York, New York                                CHIEF JUDGE

# TABLE OF CONTENTS

**PAGE(S)**

STATEMENT PURSUANT TO RULE 56.2................................................................... 2

    I.    Administrative Determination Under Review..................................... 2

    II.   Issue Presented for Review ............................................................... 2

STATEMENT OF FACTS.......................................................................................... 2

    I.    Initial Administrative Proceedings ................................................... 2

    II.   Preliminary Results And Further Administrative Proceedings ............ 5

SUMMARY OF THE ARGUMENT............................................................................ 7

ARGUMENT .......................................................................................................... 8

    I.    Standard Of Review ......................................................................... 8

    II.   Commerce's Application Of AFA With Regard To The EBCP Is Lawful And Supported By Substantial Evidence ................................. 9

        A.    Legal Framework ...................................................................10

        B.    GRT Cannot Demonstrate That Commerce's Application Of AFA Is Unlawful Or Unsupported .........................................12

        C.    GRT's Statutory Argument Has Not Been Exhausted And Lacks Merit ...........................................................................24

CONCLUSION......................................................................................................26

## **TABLE OF AUTHORITIES**

**CASES**                                                                              **PAGE(S)**

*Agro Dutch Indus. v. United States*,
    508 F.3d 1024 (Fed. Cir. 2007)........................................................................14

*Aramide Maatschappij V.o.F. v. United States*,
    901 F. Supp. 353 (Ct. Int'l. Trade 1995) .......................................... 14, 24

*Atl. Sugar, Ltd. v. United States*,
    744 F.2d 1556 (Fed. Cir. 1984)..........................................................................8

*Bio-Lab, Inc. v. United States*,
    435 F. Supp. 3d 1361 (Ct. Int'l Trade 2020) ...........................................25

*Boivin v. U.S. Airways, Inc.*,
    446 F.3d 148 (D.C. Cir. 2006) ..........................................................................24

*Boomerang Tube, LLC, TMK IP-SCO v. United States*,
    856 F.3d 908 (Fed. Cir. 2017)............................................................................13

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*,
    61 F. Supp. 3d 1306 (Ct. Int'l Trade 2015), *aff'd*,
    *Maverick Tube Corp. v. United States*, 857 F.3d 1353 (Fed. Cir. 2017)................................23

*Both-Well (Taizhou) Steel Fittings, Co. v. United States*,
    557 F. Supp. 3d 1327 (Ct. Int'l Trade 2022)..................................... 16, 17

*Changzhou Trina Solar Energy Co. v. United States*,
    466 F. Supp. 3d 1287 (Ct. Int'l Trade 2020)..................................................22

*Changzhou Trina Solar Energy Co., Ltd. v. United States*,
    352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018)................................... 11, 20

*Clearon Corp. v. United States*,
    474 F. Supp. 3d 1339 (Ct. Int'l Trade 2020)..................................22, 25

*Clearon Corp. v. United Stattes*,
    359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019)..................................................25

*Cleo Inc. v. United States*,
    501 F.3d 1291 (Fed. Cir. 2007)..........................................................................9

*Consolo v. Fed. Mar. Comm'n*,
    383 U.S. 607 (1966) .............................................................................................8

*Cooper (Kunshan) Tire Co. v. United States*,
610 F. Supp. 3d 1287 (Ct. Int'l Trade 2022)....................................................................passim

*Corus Staal, B.V. v. United States*,
502 F.3d 1370 (Fed. Cir. 2007).......................................................................... 14, 24

*Dorbest Ltd. v. United States*,
604 F.3d 1363 (Fed. Cir. 2010)................................................................................. 13

*Essar Steel Ltd. v. United States*,
721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010) *aff'd in part, rev'd in part on other grounds*,
678 F.3d 1268 (Fed. Cir. 2012)....................................................................... 10, 21

*Ferrostaal Metals Gmbh v. United States*,
518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021)........................................................... 21

*Fine Furniture (Shanghai) Ltd. v. United States*,
748 F.3d 1365 (Fed. Cir. 2014)............................................................................... 11

*Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States*,
No. 21-00088, 2022 WL 4180886 (Ct. Int'l Trade Sept. 13, 2022) ................................ 22, 23

*Fujitsu Gen. Ltd. v. United States*,
88 F.3d 1034 (Fed. Cir. 1996)..................................................................................... 8

*Gerber Food (Yunnan) Co. v. United States*,
601 F. Supp. 2d 1370 (Ct. Int'l Trade 2009)......................................................... 14

*Goldlink Indus. Co. v. United States*,
431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006)........................................................... 9

*Goodluck India Ltd. v. United States*,
11 F.4th 1335 (Fed. Cir. 2021)................................................................................ 23

*Guizhou Tyre Co. v. United States*,
348 F. Supp. 3d 1261 (Ct. Int'l Trade 2018)........................................................ 20

*Guizhou Tyre Co., Ltd. v. United States*,
399 F. Supp. 3d 1346 (Ct. Int'l Trade 2019)........................................................ 22

*Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*,
405 F. Supp. 3d 1317 (Ct. Int'l Trade 2019)........................................................ 11

*KYD, Inc. v. United States*,
607 F.3d 760 (Fed. Cir. 2010).......................................................................... 11, 12

*Mosaic Co. v. United States,*
    589 F. Supp. 3d 1298 (Ct. Int'l Trade 2022) ........................................................... 21

*Nippon Steel Corp. v. United States,*
    337 F.3d 1373 (Fed. Cir. 2003) ................................................................... 10, 19

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006) ............................................................................. 8

*PAM, S.p.A. v. United States,*
    582 F.3d 1336 (Fed. Cir. 2009) ............................................................................. 8

*Papierfabrik August Koehler SE v. United States,*
    843 F.3d 1373 (Fed. Cir. 2016) ........................................................................... 10

*Timken Co. v. United States,*
    699 F. Supp. 300 (Ct. Int'l Trade 1988) ................................................................ 9

*United States v. Eurodif S.A.,*
    555 U.S. 305 (2009) ............................................................................................... 8

*Yama Ribbons & Bows Co. v. United States,*
    419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) ......................................................... 21

## STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................................................... 8

19 U.S.C. § 1677(5)(B) ................................................................................................... 24

19 U.S.C. § 1677e(a) ...................................................................................................... 19

19 U.S.C. § 1677e(a)(1) .................................................................................................. 10

19 U.S.C. § 1677e(a)(2)(A)-(D) ...................................................................................... 10

19 U.S.C. § 1677e(b) ...................................................................................................... 10

19 U.S.C. § 1677f(i)(3) ................................................................................................... 13

28 U.S.C. § 2637(d) ....................................................................................................... 13

## REGULATIONS

19 C.F.R. § 351.307(d) ................................................................................................... 23

iv

## OTHER AUTHORITIES

*Truck and Bus Tires from the People's Republic of China*;
  87 Fed. Reg. 52,364 (Dep't of Commerce Aug. 25, 2022) ...................................................... 2

*Truck and Bus Tires From the People's Republic of China*;
  87 Fed. Reg. 39,063 (Dep't of Commerce June 30, 2022)...................................................... 2

*Truck and Bus Tires From the People's Republic of China*; 2020,
  87 Fed. Reg. 12,929 (Dep't of Commerce Mar. 8, 2022) ....................................................... 5

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
  86 Fed. Reg. 17,124 (Dep't of Commerce Apr. 1, 2021)........................................................ 2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| ————————————————————————— ) | |
| QINGDAO GE RUI DA RUBBER CO., LTD.,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Court No. 22-00229 |
| ) | |
| UNITED STATES,   ) | |
| ) | |
| Defendant,   ) | |
| ) | |
| and   ) | |
| ) | |
| UNITED STEEL, PAPER AND FORESTRY,   ) | |
| RUBBER, MANUFACTURING, ENERGY,   ) | |
| ALLIED INDUSTRIAL AND   ) | |
| SERVICE WORKERS INTERNATIONAL   ) | |
| UNION, AFL-CIO, CLC,   ) | |
| ) | |
| Defendant-Intervenors.   ) | |
| ————————————————————————— ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Court, defendant, the United States, respectfully submits this opposition to the motion for judgment on the agency record filed by plaintiff Qingdao Ge Rui Da Rubber Co., Ltd. (GRT).  GRT contests the United States Department of Commerce's (Commerce) final results of the second administrative review of the countervailing duty order covering truck and bus tires from the People's Republic of China (China).  Specifically, GRT challenges Commerce's determination to countervail the Export Buyer's Credit Program (EBCP) based on the application of facts available with an adverse inference.  Because Commerce's final results are supported by substantial evidence and in accordance with law, the Court should deny GRT's motion and enter judgment in favor of the United States.

## STATEMENT PURSUANT TO RULE 56.2

**I.**     **Administrative Determination Under Review**

GRT challenges the final results of the second administrative review of the countervailing duty order covering truck and bus tires from China.  *See Truck and Bus Tires From the People's Republic of China*; 87 Fed. Reg. 39,063 (Dep't of Commerce June 30, 2022) (final results) (P.R. 286), and accompanying Issues and Decision Memorandum (IDM) dated August 25, 2022 (P.R. 281); *see also Truck and Bus Tires from the People's Republic of China*; 87 Fed. Reg. 52,364 (Dep't of Commerce Aug. 25, 2022) (P.R. 294) (amending final results, in part).  The period of review is January 1, 2020 through December 31, 2020.

**II.**     **Issue Presented for Review**

Whether Commerce's determination to countervail the Export Buyer's Credit Program based on the application of facts available with an adverse inference (AFA) is supported by substantial evidence and in accordance with law.

## STATEMENT OF FACTS

**I.**     **Initial Administrative Proceedings**

On April 1, 2021, Commerce initiated the second administrative review of the countervailing duty order on truck and bus tires from China.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 17,124 (Dep't of Commerce Apr. 1, 2021).  Commerce selected GRT as one of the mandatory respondents for individual examination.[1]  Respondent Selection Memo (P.R. 39) (C.R. 9).  GRT is a producer and/or exporter of subject merchandise and is affiliated with Cooper Tire & Rubber Company (Cooper

---

[1]  Commerce selected Prinx Chengshan (Shandong) Tire Co., Ltd (PCT) as the other mandatory respondent.  IDM at 2.  PCT is not a party to this litigation and no party contests the final results with regard to PCT.

or CTRC), a United States importer.  *Id.*  On July 14, 2021, Commerce received timely initial

and supplemental questionnaire responses from the government of China and GRT.  *See* July 14,

2021 GOC Initial Questionnaire Response (P.R. 65–72, C.R. 29–37) (GOC IQR); July 14, 2021

GRT Initial Questionnaire Response (P.R. 73–74, C.R. 38–47) (GRT IQR).

      In its initial questionnaire to the government of China, Commerce explained that, because

the EBCP was found countervailable in a prior segment of this proceeding, it did not intend to

reevaluate the countervailability of the program.  *See* May 24, 2021 GOC Questionnaire at II-22

(P.R. 41).  However, Commerce still requested specific information from the Chinese

government to aid Commerce in evaluating whether a respondent used or benefited from the

program during the period of review.  *Id.* at II-23.  Among other things, Commerce requested

that the Chinese government provide:  (1) a copy of the September 6, 2016 Government of China

7th Supplemental Response in the Countervailing Duty Investigation of Certain Amorphous

Silica Fabric from the People's Republic of China (Export Buyer's Credit Supplemental

Questionnaire Response), (2) the original and translated copies of any laws, regulations or other

governing documents cited in the Export Buyer's Credit Supplemental Questionnaire Response,

and (3) a list of all partner/correspondent banks involved in the disbursement of funds under the

EBCP.  *Id*.  In its response, the government of China refused to provide the Export Buyer's

Credit Supplemental Response, stating that the questionnaire response was not relevant.  GOC

IQR at 107 (P.R. 65).  It also declined to provide the 2013 Administrative Measures revisions to

the EBCP, as well as the list of partner/corresponding banks, claiming that Commerce's request

was broad and not applicable.  *Id*. at 107-108.

      As to any steps taken to determine non-use, the Chinese government stated that it had

contacted the respondents for their lists of customers and then provided the lists to the Export-

Import Bank of China (EX-IM Bank), which in turn searched its database to confirm that the customers did not use the EBCP.  *Id*. at 109-112.  The Chinese government then referred Commerce to a screenshot purporting to be the EX-IM Bank's search results, and directed Commerce to the respondents' questionnaires for affidavits from their respective U.S. customers. *Id.*

Commerce subsequently issued a supplemental questionnaire to the government of China, requesting again:  (1) a list of all partner/correspondent banks involved in the disbursement of funds under the EBCP, (2) the 2013 Administrative Measures revisions to the EBCP, and (3) the Export Buyer's Credit Supplemental Questionnaire Response.  *See* GOC Supp. Questionnaire Resp. at 3-4 (P.R. 90) (C.R. 52).  Once more, rather than providing the list of all partner/correspondent banks, the government of China simply referred Commerce to screenshots of search results it claimed were from the EX-IM Bank's user database.  *Id*.  Based on these screenshots, the government claimed that the list of all partner/corresponding banks was not necessary to either confirm or verify usage of the program.  *Id*.  The Chinese government also refused, a second time, to provide the 2013 Administrative Measures revisions to the EBCP, stating that the revisions are "internal to the bank, non-public, and are not available for release." *Id*.  It further argued that the 2013 revisions were not material to the case and that it had provided Commerce with sufficient and verifiable information to reach a finding that the respondents did not use the EBCP during the period of review.  *Id*.  Finally, the Chinese government again refused to provide Commerce with the Export Buyer's Credit Supplemental Questionnaire Response.  *Id.*

GRT responded to Commerce's initial questionnaire by providing a list of U.S. customers during the period of review, but provided no evidence or declarations from any U.S. customer to

demonstrate non-use of the EBCP.  *See* GRT's IQR at III-26, III-27 (P.R. 73); *see also*

Preliminary Decision Memorandum (PDM) at 9-10 (P.R. 264).  As for the steps taken to

determine non-use, GRT relied on its assertions that none of its customers used or benefited from

the program and that GRT was never contacted by any of its customers to provide information to

receive an export buyer's credit.  *Id*.

## II.  <u>Preliminary Results And Further Administrative Proceedings</u>

On March 8, 2022, Commerce published the preliminary results, in which it found,

among other things, that the use of AFA was warranted in determining the countervailability of

the EBCP.  *See Truck and Bus Tires From the People's Republic of China*; 2020, 87 Fed. Reg.

12,929 (Dep't of Commerce Mar. 8, 2022) (P.R. 267), and accompanying PDM.  Commerce

explained that the EBCP is administered by Chinese state-owned banks, such as the Ex-Im Bank

of China, and provides loans at preferential rates to customers for the purchase of exported goods

from China.  PDM at 39.  Thus, Commerce determined the EBCP to be countervailable;

Commerce also applied AFA because the government of China had repeatedly refused to provide

the requested information necessary to allow Commerce to fully analyze the program and verify

claims by the respondents about their customers' non-use.  PDM at 9-10.

Commerce further explained that the government of China had also failed to cooperate by

not acting to the best of its ability in responding to Commerce's specific requests for

information, and that an adverse inference was warranted.  *Id*.  To fill the gap in the record, GRT

claimed that none of its customers used the EBCP but did not provide any evidence or

declarations from its U.S. customers to demonstrate non-use.  PDM at 10.  In the absence of

sufficient and verifiable evidence that GRT's U.S. customers did not use the EBCP, Commerce

preliminarily determined, as an adverse inference, that GRT used and benefited from the EBCP during the period of review. *Id*.

After issuance of the preliminary results, GRT and the government of China submitted case briefs contesting Commerce's application of adverse facts available to the usage of the EBCP. *See* GOC Case Brief (P.R. 273) (C.R. 120); GRT Case Brief (P.R. 274) (C.R. 121). The government of China argued that it had fully cooperated with Commerce regarding the program and that its statement that none of the respondents' U.S. customers used the EBCP was in and of itself sufficient to prevent an adverse facts available finding. GOC Case Brief at 1-2. GRT argued that the government of China had fully responded to Commerce's requests and further stated that neither it nor its customers applied for, used, or benefited from the program. *See* GRT Case Brief at 5. GRT also cited to the screenshots purportedly from Ex-Im Bank's system as evidence that no credits were provided to GRT or its customers during the period of review. *Id*. at 4.

In response, petitioners the United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Union, AFL-CIO submitted a rebuttal brief. *See* Petitioners Rebuttal Brief at 4-5. (P.R. 276) (C.R. 123). Petitioners argued that Commerce should continue to countervail the EBCP, explaining that the government of China had failed to provide necessary information. *Id.* They also pointed out that GRT had not provided declarations of non-use from its U.S. customers sufficient to allow Commerce to fill the gaps in the record—resulting from the Chinese government's non-cooperation—with an attempted verification.

On June 30, 2022, Commerce published its final results.[2]  *See* Final Results, 87 Fed. Reg. 39,063.  Commerce continued to find that it was unable to verify non-use of the EBCP by GRT and its U.S. customer.  IDM at 15-28.  Commerce made this determination based on the government of China's refusal to provide necessary information, as well as GRT's failure to provide non-use certifications from its U.S. customer.  *Id.*  Accordingly, Commerce continued to apply AFA.  *Id.*

## SUMMARY OF THE ARGUMENT

Commerce's determination to apply an adverse inference with respect to GRT's use of the EBCP is supported by substantial evidence and in accordance with law.  The government of China failed to cooperate to the best of its ability by refusing to provide the information requested and, as a result, Commerce was unable to verify claims of non-use from mandatory respondent GRT.  Furthermore, the gaps in the record caused by the government of China's non-cooperation were not filled by GRT, which failed to submit a declaration of non-use by its purported sole U.S. customer Cooper Tire & Rubber Company, an affiliated company.  Because the Chinese government did not provide the requested information, thereby failing to cooperate to the best of its ability, and GRT failed to put forth any evidence demonstrating that its customer did not use the EBCP during the period of review, Commerce reasonably applied AFA to find the EBCP countervailable for GRT.  The Court should sustain the final results.

---

[2]  On August 23, 2022, Commerce published an amended final results correcting two ministerial errors in the calculation of GRT's subsidy rate.  *See Truck and Bus Tires from the People's Republic of China*; 87 Fed. Reg. 52,364 (Dep't of Commerce Aug. 25, 2022).  The correction of these ministerial errors resulted in a final assigned total subsidy rate of 17.48 percent *ad valorem*.  *Id.*  However, GRT's subsidy rate as it relates to the EBCP 1.78 percent *ad valorem* remained unchanged.

# ARGUMENT

## I.    Standard Of Review

In reviewing Commerce's antidumping or countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). "Substantial evidence" amounts to "more than a mere scintilla" of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). Moreover, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent {Commerce's} finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

A party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation and internal quotation marks omitted), and the Court sustains Commerce's factual determinations as long as they are reasonable and supported by the record as a whole, even if some evidence detracts from the agency's conclusions. *See Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562-63 (Fed. Cir. 1984) (citation omitted).

This Court affords Commerce "tremendous deference" that is "both greater than and distinct from that accorded the agency in interpreting the statutes it administers" when Commerce exercises its technical expertise to select and apply methodologies to implement the dictates of the trade statute. *Fujitsu*, 88 F.3d at 1039. The Court may not overturn an agency

determination "simply because the reviewing court would have reached a different conclusion based on the same record," *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007), and it will not substitute its judgment for that of Commerce in choosing between two fairly conflicting views, even though it may have made a different choice had the matter been before it *de novo*. *See Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006); *Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988).

## II.   Commerce's Application Of AFA With Regard To The EBCP Is Lawful And Supported By Substantial Evidence

Commerce determined that the record evidence did not support a finding of non-use of the EBCP and that the government of China had not cooperated to the best of its ability; it thus appropriately determined to apply AFA with regard to the EBCP. GRT claims that Commerce's determination is unsupported by substantial evidence and unlawful. *See* GRT Br. at 11-31. But the record demonstrates that Commerce repeatedly requested necessary information from the government of China. IDM at 20-30. And, instead of cooperating, the Chinese government refused to provide the requested information. *Id.* As a result, Commerce could not verify whether GRT or its customer used or benefited from the EBCP. *Id.* In rendering its determination, Commerce explained in detail the information missing from the record, the necessity of the information, and how the lack of that information on the record affects Commerce's ability to verify non-use claims concerning the program. *Id.*

Furthermore, GRT did not provide sufficient evidence or any declarations of non-use from its U.S. customer to allow Commerce to fill the gaps of the record left by the Chinese government's non-cooperation. In its motion, GRT relies on new arguments not made during the underlying administrative proceeding. Because GRT failed to exhaust those arguments below, the Court should not entertain them. But, if the Court considers GRT's new arguments, it should

nonetheless sustain the final results, as Commerce's application of AFA to determine that GRT benefited from the EBCP was in accordance with law.

### A. **Legal Framework**

Commerce applies facts otherwise available to fill gaps in the record if "necessary information is not available on the record," 19 U.S.C. § 1677e(a)(1), or if an interested party:  (a) withholds information requested by Commerce; (b) fails to provide the information in the form or in the manner requested; (c) significantly impedes the proceedings; or (d) provides information that cannot be verified.  19 U.S.C. § 1677e(a)(2)(A)-(D).  During a countervailing duty proceeding, Commerce may select a rate with which to countervail a subsidy program by applying an adverse inference from among the facts otherwise available when it "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with {Commerce's} request for information."  19 U.S.C. § 1677e(b).

An interested party fails to act to the best of its ability when it does not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  To avoid the application of AFA, respondents must "conduct prompt, careful and comprehensive investigations of all relevant records that refer or relate to the imports in question."  *Papierfabrik August Koehler SE v. United States,* 843 F.3d 1373, 1379 (Fed. Cir. 2016) (citing *Nippon Steel Corp.*, 337 F.3d at 1382).

In countervailing duty proceedings, Commerce requires information from both the foreign government in question and the respondent foreign producers or exporters. "Typically, foreign governments are in the best position to provide information regarding the administration of their alleged subsidy programs, including eligible recipients."  *Essar Steel Ltd. v. United*

*States*, 721 F. Supp. 2d 1285, 1297 (Ct. Int'l Trade 2010), *aff'd in part, rev'd in part on other grounds*, 678 F.3d 1268 (Fed. Cir. 2012). Commerce may lawfully apply an adverse inference based upon the government of China's failure to provide requested information, even where the respondent itself cooperates. *See, e.g.*, *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010) (finding that a collateral impact on a cooperating party does not render the application of adverse inferences in a countervailing duty investigation improper); *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1371-73 (Fed. Cir. 2014) (affirming Commerce's application of adverse inferences when China did not provide requested information despite the respondents' cooperation).

With regard to the EBCP, this Court has held that, "to apply an adverse inference that a cooperating party benefited from the {program} based on the {government's} failure to cooperate, Commerce must: (1) define the gap in the record by explaining exactly what information is missing from the record necessary to verify non-use; (2) establish how the withheld information creates this gap by explaining why the information the {government} refused to give was necessary to verify claims of non-use; and (3) show that only the withheld information can fill the gap by explaining why other information, on the record or accessible by respondents, is insufficient or impossible to verify." *Jiangsu Zhongji Lamination Materials Co., Ltd. v. United States*, 405 F. Supp. 3d 1317, 1333 (Ct. Int'l Trade 2019) (citing *Changzhou Trina Solar Energy Co., Ltd. v. United States*, 352 F. Supp. 3d 1316, 1326-27 (Ct. Int'l Trade 2018)). To fill the gaps, Commerce considers non-use certifications to be an initial step to developing a record that would allow it to attempt to verify non-use of the program following a foreign government's noncooperation; however, Commerce is not obligated to ask for certifications. *See Cooper (Kunshan) Tire Co. v. United States*, 610 F. Supp. 3d 1287, 1318 (Ct. Int'l Trade 2022)

("Commerce did not have an obligation to ask for the certifications {because} Commerce based its application of AFA on the {government of China's} noncooperation and not on any need for certifications from customers to verify the EBCP in the first place….").

### B.   GRT Cannot Demonstrate That Commerce's Application Of AFA Is Unlawful Or Unsupported

In the final results, Commerce properly determined that the record lacked sufficient evidence to substantiate and verify GRT's claims of non-use of the EBCP.  IDM at 24-27. Commerce found that the government of China had failed to cooperate to the best of its ability in responding to Commerce's repeated requests for information.  *Id*. at 16.  And, as discussed above, when a foreign government fails to provide requested information in a countervailing duty proceeding, Commerce may rely on adverse facts available, even when doing so would have an adverse impact on a cooperating respondent.  *See, e.g., KYD*, 607 F.3d at 768 (finding that a collateral impact on a cooperating party does not render the application of adverse inferences in a countervailing duty investigation improper).

Pursuant to certain decisions of this Court, Commerce has instituted a practice where, if a mandatory respondent provides non-use certifications for all of its U.S. customers, rather than simply applying an adverse inference, Commerce will issue supplemental questionnaires seeking additional information in an attempt to verify those certifications.  However, in the underlying administrative proceeding, GRT did not provide non-use certifications for any customer, which might have permitted Commerce to fill the gaps in the record caused by the government of China's non-cooperation.  IDM at 17.  Because GRT did not provide non-use certifications for any U.S. customer, Commerce had an insufficient basis to take further steps and issue supplemental questions to try and verify non-use based on facts available.  *Id*.; *see also Cooper*,

610 F. Supp. at 1318 (affirming that even partial certifications are not considered "complete gap-filling information.").

The crux of GRT's argument before this Court is that GRT provided a non-use certification for its affiliated U.S. customer CTRC. *See* GRT Br at 18.  But GRT failed to raise this argument at the administrative level; instead, it argued before Commerce that the Chinese government cooperated fully with Commerce's requests for information, that the government provided screenshots for the search results of the Ex-Im Bank showing no credits were provided to GRT or its customers, and that GRT's statements that neither it nor its customers applied for, used, or benefited from the EBCP were sufficient.  *See* GRT Case Brief at 4-5.  Because GRT did not administratively exhaust its argument that it provided a certification for CRTC, and none of the limited exceptions to exhaustion apply, the Court should decline to entertain it.

The Court of Appeals for the Federal Circuit has held that parties are required, with limited exceptions, to exhaust arguments at the administrative level before bringing them to this Court.  *See, e.g., Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (holding that a party's "failure to raise its issue in its administrative case brief constituted a failure to exhaust administrative remedies"); *Boomerang Tube, LLC, TMK IP-SCO v. United States*, 856 F.3d 908, 912-13 (Fed. Cir. 2017), (28 U.S.C. § 2637(d) requires parties, except in limited circumstances, to exhaust administrative remedies prior to bringing an action in this Court); *see also* 19 U.S.C. § 1677f(i)(3) (stating that Commerce's final determination must address "relevant arguments, made by interested parties").

This Court and the Federal Circuit have recognized limited exceptions to the exhaustion requirement, involving situations where:  (1) the plaintiff raised a pure question of law that did not require further agency involvement, (2) the plaintiff did not have timely access to the

confidential record, (3) an intervening judicial interpretation since the administrative proceeding would have changed the agency result, and (4) raising the argument at the administrative level would have been futile. *See, e.g., Gerber Food (Yunnan) Co. v. United States*, 601 F. Supp. 2d 1370, 1377 (Ct. Int'l Trade 2009). None of these exceptions apply here.

First, the futility exception is narrow, and has been applied primarily in situations where parties "would be required to go through obviously useless motions in order to preserve their rights." *Corus Staal, B.V. v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (quotation marks and citation omitted). Importantly, the "mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." *Id*. There is no reasonable argument that it would have been futile, pursuant to the prevailing standard, for GRT to argue in its case brief that a respondent's questionnaire response should be treated the same as a customer certification of non-use of a specific subsidy program.

Nor is the issue argued by GRT a pure question of law of the type that would not require further involvement of the agency. Although the Federal Circuit has recognized the "pure question of law" exception to the exhaustion requirement in certain cases involving a Commerce determination, *see e.g., Agro Dutch Indus. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir. 2007), this exception does not generally apply to Commerce's antidumping and countervailing duty determinations. *See, e.g., Aramide Maatschappij V.o.F. v. United States*, 901 F. Supp. 353, 358 n.4 (Ct. Int'l. Trade 1995) ("The 'purely legal' exception is a weak one . . . . Absent other factors indicating an exception should be made, the 'purely legal' argument should fail."). In any event, the question of what level of explanation or certification Commerce requires from a

respondent or its customer is an issue highly dependent on specific factual circumstances and cannot be called a pure question of law.

Finally, there was no intervening judicial decision that changed Commerce's final results, and GRT has not alleged lack of access to confidential information. Thus, none of the exceptions to the exhaustion requirement apply, and the Court should decline to consider GRT's argument.

Even if the Court entertains the argument, the record clearly refutes GRT's contention that it provided a non-use certification for CTRC. There is no mention within GRT's questionnaire responses or administrative briefs of it having provided a certificate or declaration from the customer. *See generally* GRT IQR (C.R. 38); GRT Case Brief (C.R.121); *see also Cooper (Kunshan) Tire Co.*, 610 F. Supp. 3d at 1318 (describing similar situation where a respondent had one U.S. customer, an affiliate, with "which it would have been particularly easy to provide more information as to the claims pertaining to non-use of the EBCP.").

GRT now claims that the following excerpt from its initial questionnaire response constitutes a non-use certification of the EBCP as to its U.S. affiliate CTRC:

> 2.    Please discuss in detail the role your company plays in assisting your customers in obtaining buyer credits. Please provide a separate discussion for each type of assistance provided to your customers during the POR. Provide complete copies of documentation you provided to the China Ex-Im in order to assist your customers in obtaining buyer credits (provide this documentation for one sample transaction for each type of assistance provided to your customers during the POR).
>
> > **ANSWER**: GRT asserts that none of its customers applied for, used, or benefited from the alleged program during the POR. GRT did not provide any assistance to its customers for purposes of receiving any export buyer's credit. CTRC purchased all the subject tires sold and exported by GRT/CTRC to the United States during the POR. None of CTRC's U.S. customers applied for, used, or benefited

from this program with respect to any purchases of subject tires from CTRC during the POR, nor would they have been eligible to do so.

3.     If you claim that none of your customers used buyer credits during the POR, please explain in detail the steps you took to determine that no customer used the Buyer Credit Facility.

**ANSWER:** Please see the proceeding [*sic*] response.  GRT was never contacted by any of its customers to provide any of the information that is required to obtain an export buyer's credit from any Buyer Credit Facility.  Accordingly, GRT asserts that it is impossible that any of its customers could have possibly received export buyer's credit.

GRT IQR at III-26-27 (C.R.38).

But GRT's own blanket statements as to the non-use of the EBCP by CTRC and its U.S. customers do not constitute a non-use declaration or certification from a U.S. customer that Commerce would use as a basis to try to fill the gaps in the record left by the Chinese government's non-cooperation.  GRT did not provide any evidence or declarations, *from its U.S. customer CTRC*, demonstrating that CTRC did not use or benefit from the EBCP.  PDM at 9-10; IDM at 22-28.  Absent such evidence or certifications, Commerce reasonably relied on facts available with an adverse inference to determine that GRT used and benefited from the EBCP. *Cf. Both-Well (Taizhou) Steel Fittings, Co. v. United States*, 557 F. Supp. 3d 1327, 1335–36 (Ct. Int'l Trade 2022) (explaining how each customer provided declarations and demonstrated a willingness to verify non-use of the EBCP); *see also Cooper*, 610 F. Supp. 3d at 1314 (comparing several cases and the extensive documentation respondents provided to support assertions of non-use (*i.e.*, voluntary non-use certifications, financial documents)).[3]

---

[3]  While there have been recent cases where this Court has found sufficient evidence on the record to warrant further investigation into non-use claims (*e.g.*, non-use certifications proactively provided by a respondent for all its U.S. customers), Commerce does not request nor

A deeper review of *Both-Well* and *Cooper* is illuminating.  In *Both-Well*, the mandatory respondent provided non-use certifications from all its U.S. customers certifying that they did not finance any purchases from the respondent using the EBCP.  *See id.*, 557 F. Supp. 3d at 1327. Each submitted declaration stated that the customer did not act directly or indirectly through any third-party bank and that each customer was "willing to cooperate with any additional request for information and invites {Commerce} to verify the source of {the} Company's short- and medium-term borrowings."  *Id.* at 1336.  The Court held that the submission of non-use certifications suggested that the customers would have conducted a meaningful review of its books and records before certifying non-use and that they demonstrated a willingness to provide further information to assist Commerce's investigation into the EBCP.  *Id.*

In contrast, in *Cooper*, one of the respondents provided an email response, rather than a certification from its U.S. customer, as evidence of non-use; the Court upheld Commerce's determination that the email was insufficient to fill the gap in the record.  *See id.*, 610 F. Supp. 3d at 1319.  As the Court stated, "Commerce has explained previously as to the EBCP that an "email {from a customer} does not confirm non-use and falls short of the type of certifications or declarations provided by U.S. customers in other proceedings involving this program."  *Id.* (citation omitted).

The situation in the underlying administrative proceeding more closely mirrors that of *Cooper* than *Both-Well*.  GRT asserted in its questionnaire response that none of its customers used or benefited from the EBCP.  GRT IQR at III-26-27 (C.R.38).  Nothing in the record demonstrates that CTRC provided a certification or declaration stating that it did not use or

---

is it obligated by statute to request non-use certifications.  *Cooper*, 610 F. Supp. 3d at 1317 ("{T}he statute does not require that Commerce ask the *respondents* for supplemental information due to the {government of China's} noncooperation.") (emphasis in original).

benefit from the EBCP and that it would be willing to cooperate and provide further information to Commerce. Rather, GRT made a blanket statement as to CTRC's non-use in its questionnaire response, and now argues that GRT and CTRC showed their willingness to be verified because GRT's cover letter to its initial questionnaire states: "I am aware that the information contained in this submission may be subject to verification." GRT Br. at 24; *see* GRT IQR Cover Letter at 3–4 (C.R. 38). Pursuant to *Cooper*, these indications by GRT on behalf of CTRC are insufficient to require Commerce to undertake further attempts to verify non-use of the program by CTRC.

GRT fails to cite any cases from this Court that stand for the proposition that Commerce should be required to deem a respondent's statements of non-use on behalf of its customer as a sufficient basis to issue supplemental questionnaires and attempt to verify non-use based on facts available. And, while GRT relies on an outdated version of the EX-IM Bank's administrative measures in alleging that a Chinese exporter "would be involved in and aware of any of its customers' participation in the program," GRT Br. at 5, Commerce explained in the final results that the administrative measures were revised in 2013, and that the government of China has refused to provide those revisions to Commerce. IDM at 21-23.

GRT's claim that it provided "extensive financial documentation" to demonstrate non-use is similarly unavailing. *See* GRT Br. at 26. This "extensive financial documentation" consists of excerpts from its own annual reports and its 10-K filings. *See* GRT IQR at III-11 (C.R. 38). But in the final results, Commerce explained that verification of non-use may be possible through a review of the *U.S. customer's* financial and loan information. IDM at 22-26 (stating the caveat that there is still only limited value to this information in the absence of partner/correspondent bank information). The "extensive financial documentation" on the record exists only with regard to GRT, not CTRC—the U.S. customer. *See Cooper*, 610 F. Supp. 3d at 1313 (examining

a situation where the respondent, "which had only one U.S. customer, its parent company, {}
provided financial documentation, including a financing "reconciliation," a consolidated balance
sheet for the parent company and lending agreements.").

GRT also argues that Commerce ignored record evidence and improperly resorted to
facts available with respect to the EBCP; specifically, GRT contends that "{t}here is no
ambiguity or uncertainty in the government of China's and GRT's statements of non-use, {} and
therefore no "gaps" in the record."   GRT Br. at 17-19.  However, as explained in the final
results, Commerce cannot "simply rely on the {the government of China and GRT's}
assurances" of non-use.  IDM at 27.  Commerce has few, if any, avenues of verifying non-use
statements without the information the Chinese government consistently refuses to provide.
IDM at 27.  And 19 U.S.C. § 1677e(a) focuses on a respondent's failure to provide requested
information, rather than the reason for the failure.  *See Nippon Steel Corp. v. United States*, 337
F.3d 1373, 1381 (Fed. Cir. 2003) ("The mere failure of a respondent to furnish requested
information—for any reason—requires Commerce to resort to other sources of information to
complete the factual record on which it makes its determination.").  Commerce provided the
government of China two opportunities to submit the requested information and it refused.  IDM
at 22-28; *see also Cooper*, 610 F. Supp. 3d at 1311 ("The {government of China} has been
consistently nonresponsive and uncooperative in EBCP investigations.").  Therefore, Commerce
could reasonably resort to other sources to fill in the gaps of the record; GRT, however, failed to
put on the record a non-use certification from CTRC, which might have allowed Commerce to
fill the gaps through further investigation of CTRC.

GRT cites a litany of past cases in arguing that Commerce failed to explain why the
government of China's non-cooperation inhibited Commerce's ability to verify a respondent's

non-use claims.  *See* GRT Br. at 18.  These cases do not dictate a finding in GRT's favor.  As an initial matter, Commerce has refined its practice regarding the EBCP, and it is this current practice that is before the Court.  IDM at 17.  Although Commerce continues to rely on facts available with an adverse inference based on the government of China's non-cooperation, respondents have the opportunity to fill the gaps in the record by first providing non-use certifications, and then financial information, from their U.S. customers.  *Id.*  Where Commerce receives certifications of non-use from the respondent's U.S. customer(s), it issues supplemental questionnaires seeking loan information from the U.S. customer(s) and then takes additional steps to verify the customer's responses.  *Id.*

However, "a respondent is {not} entitled to receive a request from Commerce to provide customer certifications of non-use or other financial information."  *Cooper*, 610 F. Supp. 3d at 1316.  In its initial questionnaire response, GRT did not submit any evidence or certifications from CTRC demonstrating that CTRC did not use the EBCP; rather, it stated only in its narrative response that its affiliated customer did not use the program.  Therefore, Commerce appropriately did not take any further steps to verify non-use.  *Id.* at 1317 ("{T}he statute does not require that Commerce ask the respondents for supplemental information due to the government of China's noncooperation."); IDM at 17.

Importantly, in the cases cited by GRT, the record in front of Commerce generally contained signed declarations and/or other evidence from U.S. customers certifying non-use.  *See, e.g., Guizhou Tyre Co. v. United States*, 348 F. Supp. 3d 1261, 1271 (Ct. Int'l Trade 2018) ("There is no ambiguity or uncertainty . . . , as this information consisted of signed declarations from Plaintiffs' U.S. customers certifying non-use."); *Changzhou Trina*, 352 F. Supp. 3d at 1324 (discussing how respondents "submitted affiliate and customer certifications of non-use

applicable to the period of review").  And, while in *Yama Ribbons & Bows Co. v. United States*, 419 F. Supp. 3d 1341, 1356 (Ct. Int'l Trade 2019), the Court explained that Commerce did not provide the parties with a "meaningful opportunity" to submit factual evidence, Commerce here specifically requested information regarding the EBCP and indeed gave the government of China the opportunity to remedy its deficiency via a supplemental questionnaire.  IDM at 16-28; *see also Mosaic Co. v. United States*, 589 F. Supp. 3d 1298, 1307 (Ct. Int'l Trade 2022) ("Commerce provided both {the respondent} and the {foreign government} a meaningful opportunity to provide alternative evidence before the final determination.).

GRT was also given an opportunity to submit evidence in support of its claims of non-use but chose not to do so, failing to submit a non-use certification or other evidence demonstrating non-use from CTRC.  IDM at 26.  Although GRT argues that Commerce was required to present it with more opportunities to remedy the record, GRT Br. at 29-31, as explained above, Commerce is not required to request customer certifications of non-use or other customer financial information.

Although GRT attempts to cast the Chinese government's lack of cooperation as "irrelevant," Commerce explained why the requested information was not only relevant, but critical, in assessing whether a respondent's customer used the EBCP.  IDM at 22-28.  It is not the purview of a respondent or a foreign government to determine what requested information is relevant.  *See, e.g., Ferrostaal Metals Gmbh v. United States,* 518 F. Supp. 3d 1357, 1376 (Ct. Int'l Trade 2021) ("It is well established that it is Commerce, not the respondent, that determines what information is to be provided…") (citations omitted); *Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285, 1299 (Ct. Int'l Trade 2010) ("Regardless of whether {the respondent} deemed the license information relevant, it nonetheless should have produced it in the event that

Commerce reached a different conclusion.").  Moreover, this Court has recognized Commerce's explanation for requesting such information as necessary to verify a respondent's claim of non-use.  *See Cooper*, 610 F. Supp. 3d at 1287 ("Commerce adequately explained why it would be unable to verify statements of nonuse without updated information about EBCP requirements.").

Where this Court has set aside Commerce's EBCP determinations as being unsupported by substantial evidence, it has generally done so where the respondent had either provided the necessary information (*e.g.,* non-use certification by U.S. customers), or where Commerce failed to explain why the information was necessary to its determination.  *See, e.g.*, *Changzhou Trina Solar Energy Co. v. United States*, 466 F. Supp. 3d 1287, 1291-93 (Ct. Int'l Trade 2020); *Clearon Corp. v. United States*, 474 F. Supp. 3d 1339, 1353 (Ct. Int'l Trade 2020) (holding on remand that substantial evidence did not support applying AFA where Commerce did not analyze whether the missing information actually impacted its ability to verify); *Guizhou Tyre Co., Ltd. v. United States*, 399 F. Supp. 3d 1346, 1349-53 (Ct. Int'l Trade 2019) (holding that application of AFA was unsupported by substantial evidence where Commerce failed to explain why information was necessary).  Neither situation applies here, where Commerce detailed the information it needed, explained why it needed that information, and GRT did not provide a non-use certification or necessary financial information from CTRC.

Indeed, in a recent EBCP case, this Court sustained Commerce's determination that the government of China had failed to provide necessary information to determine whether the respondent used the EBCP, even when the respondent *had* provided non-use certifications.  *See Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States*, No. 21-00088, 2022 WL 4180886 (Ct. Int'l Trade Sept. 13, 2022).  Unsurprisingly, GRT argues that *Fujian Yinfeng* is an outlier amongst the bulk of the cases decided by this Court.  GRT Br. at 22-23.  But this Court's prior

decisions are not binding, and the Court here is no more obligated to follow the decisions cited by GRT (which, as we explained, are readily distinguishable) than it is to follow the logic in *Fujian Yinfeng*.

GRT also argues that, unlike the multiple customers at issue in *Fujian Yinfeng*, it has only one customer—CTRC.  *Id.*  This argument does not help GRT, but rather hurts it.  As this Court has stated, "it would have been particularly easy to provide more information as to the claims pertaining to non-use of the EBCP," for a respondent who has only one customer that is also affiliated.  S*ee Cooper*, 610 F. Supp. 3d at 1318.

Finally, GRT argues that, "until {Commerce} actually attempts verification and adequately confronts these (purportedly) insurmountable challenges, there is little for {Commerce} to hang its hat on when it continues to find a gap in the record."  GRT Br. at 23.  But the purpose of verification is "to verify the accuracy and completeness of submitted factual information."  19 C.F.R. § 351.307(d).  As this Court and the Federal Circuit have recognized, verification is not a fact-finding mission.  *See Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 61 F. Supp. 3d 1306, 1349 (Ct. Int'l Trade 2015), *aff'd, Maverick Tube Corp. v. United States*, 857 F.3d 1353 (Fed. Cir. 2017).  Rather, "{v}erification represents a point of no return" and "{t}he purpose of verification is to test information provided by a party for accuracy and completeness."  *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343-44 (Fed. Cir. 2021) (quotation and citation omitted).  For Commerce to perform the verification steps to determine whether the manufacture, production, or export of respondent's merchandise has been subsidized and involved intermediary banks and indirect transactions from the Ex-Im Bank to the exporter's customers, Commerce must know the names of the intermediary banks because it would be their names, not the name "China Ex-Im Bank," that would appear in the subledgers of

the U.S. customers if they received the credits.  IDM at 26.  Without cooperation from the

government of China and the Ex-Im Bank, Commerce cannot know the banks that could have

disbursed export buyer's credits to a respondent's customers.  *Id.*

**C.  GRT's Statutory Argument Has Not Been Exhausted And Lacks Merit**

The Court should not consider GRT's remaining argument—that the final results violated

19 U.S.C. § 1677(5)(B) by failing to determine whether a benefit was conferred, GRT Br. at 15-

16—because, as with its argument that Commerce erroneously found that GRT did not submit a

non-use certification, GRT failed to exhaust this issue before Commerce.  As explained above,

parties are required to exhaust arguments during the underlying administrative proceedings, and

only limited exceptions to the exhaustion requirement exist, none of which apply here.

Again, the futility exception is narrow, and the "mere fact that an adverse decision may

have been likely does not excuse a party from a statutory or regulatory requirement that it

exhaust administrative remedies."  *Corus Staal*, 502 F.3d at 1379 (Fed. Cir. 2007).  There is no

cause to find that it would have been truly futile for GRT to raise, before Commerce, the issue of

whether the elements of a countervailable subsidy, as described in 19 U.S.C. § 1677(5)(B),

prevent Commerce from applying an adverse inference and countervailing the EBCP.

The exception regarding pure questions of law also does not apply; again, this exception

does not generally apply to Commerce's antidumping and countervailing duty determinations.

*See Aramide Maatschappij*, 901 F. Supp. at 358 n.4.  To the extent that a question of law relates

to the antidumping and countervailing duty statute, Commerce, the agency charged with

administering that statute, is entitled to articulate its views regarding legal issues in the first

instance.  *See Boivin v. U.S. Airways, Inc.*, 446 F.3d 148, 156 (D.C. Cir. 2006).  Whether

Commerce properly considered the elements for finding a countervailable subsidy before

applying an adverse inference to a consistently countervailed subsidy program, is certainly an argument that Commerce should consider in the first instance, particularly as it is not a "pure" question of law but entails a factual consideration of the EBCP.

Notwithstanding GRT's failure to exhaust, Commerce explained in the final results that, because the government of China had not cooperated to the best of its ability to provide Commerce with the necessary information to fully analyze the EBCP and verify claims of non-use, and because gaps in the record existed, Commerce could not verify whether a benefit was conferred to GRT under the program. IDM at 22-28. And, as this Court has held, the government of China has been consistently uncooperative to Commerce's EBCP inquiries. *See Cooper*, 610 F. Supp. 3d at 1311. Here, the government twice failed to provide the requested information. IDM at 26. As to GRT, it had the opportunity to present record evidence demonstrating non-use of the EBCP from its customer but failed to provide that information. IDM at 17. "The rationale for permitting the application of {adverse facts available} to cooperative respondents is that 'a remedy that collaterally reaches {a cooperative respondent} has the potential to encourage the {foreign government} to cooperate so as not to hurt its overall industry." *Bio-Lab, Inc. v. United States*, 435 F. Supp. 3d 1361, 1368 (Ct. Int'l Trade 2020). Accordingly, Commerce lawfully, and reasonably, determined to find, on the basis of adverse facts available, that the program was countervailable.

GRT cites *Clearon Corp. v. United Stattes*, 359 F. Supp. 3d 1344, 1360 (Ct. Int'l Trade 2019), for the proposition that the Chinese government's assertions of non-use can be considered probative. GRT Br. at 17. But it takes the Court's statements on that point out of context and fails to address the significant reasons (which are not present in this case) that ultimately led the Court to remand Commerce's determination. *See Clearon*, 359 F. Supp. 3d at 1360 (Ct. Int'l

Trade 2019) ("{Respondent's} questionnaire responses and the forty-four declarations of non-use by its U.S. and non-U.S. customers stated that {it} did not directly or indirectly use or benefit from the EBCP . . . {in addition to} the government of China's statements support{ing} {respondent's} claims of non-use.").

Although the record regarding the EBCP suffers from significant deficiencies, the government of China's description of the program and the few supporting materials it has provided demonstrate that through this program, state-owned banks provide loans at preferential rates for the purchase of exported goods from China.  IDM at 27.  Moreover, Commerce has found this program to be countervailable and/or not used in past countervailing duty proceedings involving China, including an earlier segment of this same proceeding.  *Id.* at 27-28. Accordingly, the Court should reject GRT's claim that the final results violated U.S.C. § 1677(5)(B) by failing to determine whether a benefit was conferred on GRT.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiff's motion for judgment on the agency record, sustain the final results, and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                                  s/Sosun Bae
ASHLANDE GELIN                               SOSUN BAE
Attorney                                     Senior Trial Counsel
U.S. Department of Commerce                  U.S. Department of Justice
Office of the Chief Counsel for Trade        Civil Division
   Enforcement and Compliance Commercial Litigation Branch
1401 Constitution Avenue, NW                 P.O. Box 480
Washington, D.C. 20230                       Ben Franklin Station
                                             Washington D.C. 20044
                                             Tel: (202) 503-7568
                                             Fax: (202) 305-7644
                                             Email: Sosun.Bae@usdoj.gov

May 22, 2023                                 Attorneys for Defendant

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant section 2(B)(1) of the Standard Chambers Procedures of this that Court, this brief contains 7,840 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/Sosun Bae
Sosun Bae

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of May, 2023, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

<u>/s/ Sosun Bae</u>
Sosun Bae