UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| Qingdao Ge Rui Da Rubber Co., Ltd., <br><br>　　　　Plaintiff, <br><br>　v. <br><br>United States, <br><br>　　　　Defendant, <br><br>　and <br><br>United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, <br><br>　　　　Defendant-Intervenor. | Court No. 22-00229 |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF**
**RULE 56. 2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

　　　　　　　　　　　　　Daniel Cannistra
　　　　　　　　　　　　　Weronika Bukowski
　　　　　　　　　　　　　Kelsey Clinton

　　　　　　　　　　　　　Crowell & Moring LLP
　　　　　　　　　　　　　1001 Pennsylvania Avenue, NW
　　　　　　　　　　　　　Washington, DC 20004
　　　　　　　　　　　　　Tel: (202) 624-2500
　　　　　　　　　　　　　Email: dcannistra@crowell.com

　　　　　　　　　　　　　*Counsel to Plaintiff*

Dated: July 21, 2023

**TABLE OF CONTENTS**

A.  The Department's use of adverse inferences for the Export Buyer's Credit Program was not in accordance with the law and was unsupported by substantial evidence. ...................................................................................1

   1.  In the underlying review, Commerce incorrectly stated that it did not have non-use certifications from GRT's U.S. customer. ..........1

   2.  There is no gap in the record as to whether or not GRT and its customers used the EBC program. ......................................................2

   3.  If a gap existed, Commerce disregarded current practice by failing to provide GRT an opportunity to remedy any issue................4

B.  Plaintiff administratively exhausted all arguments brought in the Motion.....7

   1.  Commerce fully considered whether GRT provided a non-use certification from its sole U.S. customer, CTRC. ................................8

   2.  GRT brought forth the argument that Commerce did not properly determine if a benefit was conferred. ...................................13

C.  Even if the Court finds that GRT failed to exhaust its administrative remedies, the Court should nonetheless find that the Department's findings were unsupported by substantial evidence. ...................................................14

CONCLUSION............................................................................................................14

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ABB Inc. v. United States*,
 190 F. Supp. 3d 1159 (U.S. Ct Int'l Trade 2016) ............................................................8, 10, 13

*Aramide Maatschappij V.o.F. v. United States*,
 901 F. Supp. 353 (Ct. Int'l. Trade 1995) ...................................................................................13

*Changzhou Trina Solar Energy Co. v. United States*,
 352 F. Supp. 3d 1316 (Ct. Int'l Trade 2018) ...............................................................................3

*CS Wind Vietnam Co. v. Untied States*,
 832 F.3d 1367 (Fed. Cir. 2016)...................................................................................................5

*Dalian Meisen Woodworking Co., v. United States*,
 No. 20-00110, slip op. 23-57, 2023 Ct. Intl. Trade LEXIS 70 (Apr. 23, 2023) .......................11

*Guizhou Tyre Co. v. United States*,
 399 F. Supp. 3d 1346 (Ct. Int'l Trade 2019) ...............................................................................5

*Jacobi Carbons AB v. Untied States*,
 313 F. Supp. 3d 1308 (Ct. Int'l Trade 2018) ...............................................................................9

*Mid Continent Steel & Wire, Inc. v. Untied States*,
 940 F.3d 662 (Fed. Cir. 2019).....................................................................................................5

*Pakfood Public Co. v. United States*,
 34 C.I.T. 1122 (2010) .................................................................................................................9

*Peer Bearing Company-Changshan v. United States*,
 36 C.I.T. 1700 (2012) ...............................................................................................................13

*Risen Energy Co. v. United States*,
 No. 20-03912, slip op. 23-48, 2023 Ct. Intl. Trade LEXIS 52 (Apr. 11, 2023) .......................11

*Ta Chen Stainless Steel Pipe, Ltd. v. United States*,
 342 F. Supp. 2d. 1191 (Ct. Int'l Trade 2004) ..............................................................................8

*Valley Fresh Seafood, Inc. v. United States*,
 31 C.I.T. 1989 (2007) ............................................................................................................8, 10

*Zhaoqing Tifo New Fibre Co. v. United States*,
 60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) ...............................................................................12

**Statutes**

19 U.S.C. § 1677(5)(B) ..................................................................................................... 7, 12, 13

19 U.S.C. § 1677b(c)(1) ............................................................................................................ 13

19 U.S.C. § 1677m(d) ................................................................................................................. 5

**Other Authorities**

*2022 Countervailing Duty Administrative Review of Truck and Bus Tires from the People's Republic of China: Initial Questionnaire*, C-570-041, Barcode No. 4385577-01 (June 5, 2023) ............................................................................................ 5

*Issues & Decision Mem. for the Final Affirmative Determination of the Countervailing Duty Investigation of Certain Mobile Access Equip. & Subassemblies Thereof from the People's Republic of China*, C-570-140, Barcode No. 4171467-02 (Oct. 12, 2021) ................................................................................ 11

*Issues & Decision Mem. for the Final Determination in the Countervailing Duty Investigation of VSE from China*, C-570-125, Barcode No. 4095898-01 (Mar. 5, 2021) .................................................................................................................. 6

## PLAINTIFF'S REPLY BRIEF

Plaintiff Qingdao Ge Rui Da Rubber Co., Ltd. ("Plaintiff" or "GRT") submits this Reply Brief in support of its Motion for Judgment on the Agency Record ("Motion"). As the Defendant-Intervenor adopted the arguments from the Government's Response Brief, *see* Resp. Br. Of Def.-Int. 2–3 (June 21, 2023), ECF No. 33, and put forth no additional arguments, Plaintiff hereby directs its Reply only to the Government's Response Brief, Def.'s Resp. to Pl.'s Mot. For J. on the Agency R. (May 22, 2023), ECF No. 32 ("Def.'s Resp.").

## ARGUMENT

**A.  The Department's use of adverse inferences for the Export Buyer's Credit Program was not in accordance with the law and was unsupported by substantial evidence.**

The Government argues that the Department of Commerce ("Commerce" or "the Department") appropriately applied facts otherwise available with an adverse inference (collectively referred to by Commerce as "AFA") in connection with the Export Buyer's Credit program ("EBC program" or "EBCP") because the Government of China ("GOC") failed to provide requested information and "[a]s a result, Commerce could not verify whether GRT or its U.S. customer used or benefited from the EBCP." Def.'s Resp. 9. These arguments should be rejected.

**1.  In the underlying review, Commerce incorrectly stated that it did not have non-use certifications from GRT's U.S. customer.**

Commerce found that "[i]n the instant review, we do not have non-use certifications from all U.S. customers of GRT." *Issues & Decision Mem. for the Final Results of the Countervailing Duty Admin. Review of Truck & Bus Tires from the People's Republic of China; 2020* at 17 (June 24, 2022) (P.R. 281) ("IDM"). As discussed in GRT's opening brief, in so finding Commerce improperly ignored record evidence. Rule 56.2 Mot. on behalf of GRT 15–17 (Feb. 17, 2023),

1

ECF No. 31 ("GRT Mot."). GRT has a single U.S. customer, Cooper Rubber and Tire Company ("CTRC"), the majority owner of GRT. *Id.* at 16. Furthermore, in GRT's initial questionnaire response, CTRC certified that it did not use the EBC program by certifying that all of the responses in the questionnaire were accurate. GOC Initial Questionnaire Response (July 14, 2021) (P.R. 65–72, C.R. 29–37) ("GOC IQR"). The cover letter to GRT's Initial Questionnaire Response ("IQR") contains the following:

> I, Jack Jay McCracken, Vice President, Assistant General Counsel & Assistant Secretary for *Cooper Tire & Rubber Company* and its majority-owned affiliate Qingdao Ge Rui Da Rubber Co., Ltd. . . . *certify* that the public information and any business proprietary information of the Company contained in this submission is accurate and complete to the best of my knowledge.

GRT IQR, Cover Letter at 3 (emphasis added). The above certification by CTRC's Vice President, Assistant General Counsel, and Assistant Secretary, Jack Jay McCracken, covers all the responses in GRT's questionnaire, including the statement that "none of [GRT's] customers applied for, used, or benefitted from the [EBC] program during the POR." *Id.* at III-27.

This evidence undercuts the Department's findings. *See* IDM at 17. Defendant's response continues to incorrectly state that GRT did not provide declarations of non-use from its U.S. customer. Def.'s Resp. 9.

> **2.     There is no gap in the record as to whether or not GRT and its customers used the EBC program.**

In the Issues and Decisions Memorandum, Commerce asserted that "the GOC's non-cooperation and withholding of necessary information" created gaps in the record that required Commerce to rely on AFA to make a determination as to GRT's use of the EBC program. IDM at 17. However, in that statement, Commerce inappropriately equates the program's operation with its use. GRT Mot. 18–19.

2

GRT does not dispute that the GOC did not provide documentation related to the alleged 2013 revisions to the Administrative Measures of the EBC program, a list of partner banks, or the GOC's supplemental response from a separate EBC program investigation. However, this missing information that the Government cites as a justification for the Department's determination that GRT used the EBC program, *see* Def.'s Resp. 3, 19, is not relevant to GRT's usage or non-usage of the program. The missing information relates only to the *operation* of the EBC program, and does not impact Commerce's ability to determine whether GRT or its customers *used* the EBC program. *See Changzhou Trina Solar Energy Co. v. United States*, 352 F. Supp. 3d 1316, 1326 (Ct. Int'l Trade 2018) ("Commerce, however, did not explain why the GOC's failure to explain this program was necessary to assess claims of non-use and why other information accessible to respondents was insufficient.").

Instead, the evidence on the record that was relevant to GRT's usage or non-usage of the EBC program made clear that neither GRT nor its sole U.S. customer and parent company, CTRC, utilized the EBC program. In its response to the Department's initial questionnaire, the GOC stated that "none of [GRT's] U.S. customers applied for, used, or benefited from" the EBC program during the period of review ("POR"). GOC IQR at 106. Additionally, the GOC clarified that if a foreign buyer receives any loan from the EBC program, the Chinese exporter would be aware of the receipt. *Id.* at 110. This means that GRT would know both if it used the EBC program and if any of its customers used the EBC program. Further, GRT confirmed that "none of its customers applied for, used, or benefitted from the [EBC] program during the POR." GRT IQR at III-27. Therefore, Commerce did not need to "resort to other sources to fill in the gaps of the record", Def.'s Resp. 19, because there were no gaps in the record as to the question of whether GRT or its customers used the EBC program. GRT. Mot. 17–20.

3

### 3. If a gap existed, Commerce disregarded current practice by failing to provide GRT an opportunity to remedy any issue.

Even were the Court to determine there are gaps in the record as to the question of EBC program usage, the Government acknowledges that Commerce disregarded its own current practice in EBC program investigations by resorting to AFA without providing GRT an opportunity to fill these gaps. In its Response Brief, the Government explains that current practice is as follows:

> Although Commerce continues to rely on facts available with an adverse inference based on the government of China's non-cooperation, respondents have the opportunity to fill the gaps in the record by first providing non-use certifications, and then financial information, from their U.S. customers. Where Commerce receives certifications of non-use from the respondent's U.S. customers, it issues supplemental questionnaires seeking loan information from the U.S. customers and then takes additional steps to verify the customer's responses.

Def.'s Resp. 20 (citations omitted).

As GRT noted in its original 56.2 Motion, it did provide a non-use certification from its sole U.S. customer, CTRC. GRT Mot. 15–17. The Government contends that GRT's questionnaire response cannot serve as a non-use certification from its U.S. customer because "GRT's own blanket statements as to the non-use of the EBCP by CTRC and its U.S. customers do not constitute a non-use declaration or certification [by CTRC]." Def.'s Resp. 16. However, in making this argument, the Government ignores GRT's arguments in its opening brief, which makes clear that it is the combination of the questionnaire's responses assuring CTRC did not use the EBC program *and* the certification from CTRC's Vice President that the questionnaire's responses are accurate and complete which serve as a certification of non-use from CTRC. GRT Mot. 15–17. This is not a "blanket statement" made solely by GRT, but is instead a statement that has been reviewed and certified as accurate by CTRC.

The Government further argues that GRT did not cite to any cases for the "proposition that Commerce should be required to deem a respondent's statements of non-use on behalf of its customer as a sufficient basis" for verification or supplemental questionnaires. Def.'s Resp. 18. However, GRT's response stating CTRC did not use the EBC program was certified by the Vice President of CRTC. GRT is not aware that the Department or the Court has ever clarified the acceptable forms of a non-use certification. Indeed, it appears that Commerce has never specified the scope, content, or format of a non-use certification. Additionally, the questionnaire issued by Commerce provided no guidance on this issue. Even questionnaires that Commerce has issued in recent proceedings fail to provide any guidance on the acceptable format of certifications. *See, e.g.*, 2022 Countervailing Duty Administrative Review of Truck and Bus Tires from the People's Republic of China: Initial Questionnaire, C-570-041, Barcode No. 4385577-01 at II-5–6 (June 5, 2023). Commerce must properly justify its chosen methodology, and it has not done so in this instance. *See Mid Continent Steel & Wire, Inc. v. United States*, 940 F.3d 662, 674–75 (Fed. Cir. 2019) (citing *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016)). Given this, the general certification provided by CTRC, combined with a statement of non-use, cannot be deemed insufficient when measured against an invisible standard.

If Commerce was not satisfied with what GRT and CTRC provided then it could have easily requested additional information, which both GRT and CTRC were prepared to submit. *See* GRT IQR, Cover Letter at 3 (acknowledging that the information in the submission "may be subject to verification or corroboration"). However, Commerce never made such a request.

By not providing GRT with an opportunity to remedy the perceived deficiencies in the record, Commerce violated its statutory obligation. *See* 19 U.S.C. § 1677m(d) (If an investigating agency determines that provided information does not comply with a request, the agency "shall

5

promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency" before applying AFA.); *see also Guizhou Tyre Co. v. United States*, 399 F. Supp. 3d 1346, 1352 (Ct. Int'l Trade 2019) ("Commerce had an opportunity to 'clearly and adequately' request additional information that would have helped the Department verify the non-use declarations (or ascertain Plaintiffs' alleged use of the Program); it failed to do so, and the court will not fault Plaintiffs for the Department's shortcomings.").

In addition to the non-use certification provided by GRT and CTRC, GRT also provided the financial records of CTRC. *See* GRT IQR at III-11 (explaining that excerpts from CTRC's annual reports and Form 10-K filings, "including consolidated financial statements for the last three fiscal years" are provided in Exhibit 17, as well as providing links to CTRC's full annual reports, which are publicly available). In previous investigations, Commerce has concluded that a respondent providing financial documentation for its parent company that is also its only U.S. customer served to "fill some of the gaps of the record . . . sufficient [] to find non-use." *Issues & Decision Mem. for the Final Determination in the Countervailing Duty Investigation of VSE from China*, C-570-125, Barcode No. 4095898-01, at 23 (Mar. 5, 2021). Thus, if the Department determined that CTRC's non-use certification was not sufficient, it could have reviewed the provided financial records to try to "fill" any perceived gaps. However, the IDM makes no reference to the financial records provided by GRT and CTRC in its discussion of the EBC program.

In an apparent effort to explain why Commerce failed to consider the provided financial records in making its determination, the Government claims that the financial documentation on the record "exists only with regard to GRT, not CTRC." Def.'s Resp. 18. This notion directly

contradicts with the record, which contains excerpts from CTRC's Annual Reports and Form 10-K Financial Statements for 2018, 2019, and 2020.  *See* GRT IQR, Exhibit 17.  While GRT's IQR acknowledged that "GRT's financial statements ultimately are consolidated" with those of CTRC, *id.* at III-11, this is a significant difference than what the Government alleges in stating that GRT provided only "excerpts from its own annual reports and its 10-K filings."  Def.'s Resp. 18.  Finally, as indicated in GRT's opening brief, GRT's initial questionnaire response noted that CTRC's complete annual reports and Form 10-K filings are publicly available and a link was provided to such publicly available documents.  GRT Mot. 25 (citing GRT IQR at III-11).

The Government acknowledges that "verification of non-use may be possible through a review of the *U.S. customer's* financial and loan information."  Def.'s Resp. 18 (emphasis in original).  And that is exactly what GRT provided here.  As the Government itself notes, the Department could have easily verified CTRC's non-use of the EBC program if it had made an effort to do so, but it chose not to, for a reason that has not been made clear to Plaintiff.

**B.     Plaintiff administratively exhausted all arguments brought in the Motion.**

The Government argues that GRT "did not administratively exhaust" two arguments: (1) that GRT provided a non-use certification for CTRC, and (2) that Commerce violated 19 U.S.C. § 1677(5)(B) by failing to determine whether a benefit was conferred.  Def.'s Resp. 13, 24.  As Plaintiff will demonstrate, it did exhaust the non-use certification argument, and even if it had not, (1) Commerce nonetheless fully considered the issue, and (2) there has been intervening case law on this matter.  As to the failure to determine if a benefit was conferred, GRT also addressed this argument in its case brief.  Moreover, this is a question of "pure law" and therefore qualifies as an exception to the failure to exhaust doctrine.

### 1. Commerce fully considered whether GRT provided a non-use certification from its sole U.S. customer, CTRC.

Contrary to what the Government contends, GRT did raise the argument that it provided a non-use certificate for CTRC at the administrative level. In fact, in its case brief, GRT explicitly argued that, "the Department must accept the *certified* record evidence . . . that neither GRT nor any of its customers used the EBC Program." GRT Case Br. 6–7 (Apr. 8., 2022) (P.R. 274, C.R. 121). This record evidence included the declaration by the Assistant General Counsel of CTRC, who also acts as the General Secretary of GRT, Jack Jay McCracken. Mr. McCracken certified the questionnaire response stating CTRC did not use the EBC program. This certification explicitly states that GRT is a majority-owned affiliate of CTRC. Additionally, GRT submitted a list of U.S. customers in response to the Department's initial questionnaire. GRT IQR at III-27, Ex. 16. This list included a single U.S. customer: CTRC. GRT also stated in its questionnaire response that "CTRC purchased all subject tires sold and exported by GRT/CTRC to the United States during the POR." *Id.* at III-27. All of this evidence was submitted before Commerce during the underlying administrative review and, as stated in GRT's case brief, "the Department must accept the *certified* record evidence from both the GOC and GRT that neither GRT nor any of its customers used the EBC Program." GRT Case Br. 6–7 (emphasis added).

Assuming, *arguendo*, that GRT's case brief is not sufficient to exhaust its administrative remedies, an exception to the doctrine would apply to the facts at hand. The Court of International Trade has previously recognized exceptions to the doctrine of exhaustion. *See Ta Chen Stainless Steel Pipe, Ltd. v. United States*, 342 F. Supp. 2d. 1191, 1206 n. 18 (Ct. Int'l Trade 2004) (discussing five recognized exceptions to the doctrine of exhaustion); *see also ABB Inc. v. United States*, 190 F. Supp. 3d 1159, 1185 n.35 (Ct Int'l Trade 2016) ("There is no exhaustive list of exceptions. Previously enumerated exceptions include futility, an intervening court decision such

8

that the new interpretation would impact the agency's actions, pure question of law, or when plaintiff had no reason to believe the agency would not follow established precedent.") (citation omitted).

One such exception is that a party will not be required to exhaust an argument when "Commerce had the full opportunity to consider the [subject] issue during the administrative review." *Valley Fresh Seafood, Inc. v. United States*, 31 C.I.T. 1989, 1994 (2007). "[W]here the record indicates that—either as a result of other parties' arguments or the agency's decision-making process—the agency in fact thoroughly considered the issue in question" then the exhaustion requirement will be waived. *Pakfood Public Co. v. United States*, 34 C.I.T. 1122, 1145 (2010); *see also Jacobi Carbons AB v. Untied States*, 313 F. Supp. 3d 1308, 1330–31 (Ct. Int'l Trade 2018). It is clear from the record that even if GRT did not raise the certification argument in its case brief, Commerce nonetheless fully considered the question of whether any material provided by GRT constituted a non-use certification from CTRC. In addition to GRT's own case brief, which referenced the provided certified evidence, the GOC's case brief also noted that the respondents, which includes GRT, "provided statements of non-use in their initial responses after confirmation with their U.S. customers and submission of customer declarations." GOC Case Br. 17 (Apr. 7, 2022) (P.R. 273, C.R. 120). The GOC's case brief also responded to the Department's assertion in the preliminary IDM that there was an, "absence of evidence from all of GRT's and PCT's U.S. customers that they did not use the program." *Id.* at 17 (quotations omitted). The GOC's response argued that the Department was "continually ignor[ing] such declarations." *Id.* at 18.

It is apparent that Commerce fully considered whether GRT provided a non-use certification from its sole U.S. customer and ultimate parent, GRT. The GOC's case brief clearly

9

asserted the argument that GRT provided a non-use certification from CTRC.  The Department summarized the GOC's case brief as including the argument that, "[r]ecord evidence provided . . . by the respondents, including certifications and statements of non-use, demonstrates that the EBC program was not used."  IDM at 16 (citing to GOC Case Br. 16-18).  As explained in *Valley Fresh Seafood*, "[t]he court may excuse a party's failure to raise an argument before the administrative agency if [] the agency in fact considered the issue."  31 C.I.T. at 1994.

The IDM further makes clear that Commerce fully considered the issue of whether GRT provided a non-use certification from its U.S. customer, CTRC.  The Department wrote, "{i}n the instant review, we do not have non-use certifications from all U.S. customers of GRT."  IDM at 17.  The Department also wrote, "GRT {} claimed that none of its customers used this program but did not provide any evidence or declarations to demonstrate its customers did not use this program."  IDM at 26.  Assuming that Commerce reviewed the record evidence before making its determination that GRT did not provide a non-use certification for CTRC, then Commerce considered GRT's current argument that the certification from CTRC Assistant General Counsel Jack Jay McCracken of the responses to GRT's questionnaire constituted a non-use declaration from CTRC.  Indeed, it is evident from the record itself that CTRC is GRT's sole U.S. customer.

A second exception to the exhaustion doctrine also applies here.  Since the filing of GRT's case brief, the law surrounding this issue has developed.  As this Court has noted, an exception to the exhaustion requirement includes "an intervening court decision such that the new interpretation would impact the agency's actions."  *ABB Inc.*, 190 F. Supp. 3d, at 1185 n.35.

GRT's case brief was filed on April 8, 2022.  As discussed in GRT's 56.2 motion, there have been a number of CIT decisions issued related to the EBC program since GRT filed its case brief.  Additionally, the Department's practice to require non-use certifications in response to an

10

initial questionnaire appears to be a methodology that has recently, and continues to, evolve in light of CIT jurisprudence. *See* GRT Mot. 27. As discussed in GRT's 56.2 motion, this change of practice appeared in remand results that the Department filed in August and October of 2022. *See id*. GRT has identified earlier developments that appeared to culminate in this practice beginning in late 2021. *See Issues & Decision Mem. for the Final Affirmative Determination of the Countervailing Duty Investigation of Certain Mobile Access Equip. & Subassemblies Thereof from the People's Republic of China*, C-570-140, Barcode No. 4171467-02 (Oct. 12, 2021).

While GRT understands that a change in methodology in and of itself would not qualify as an exception to the exhaustion doctrine, here there have been intervening opinions questioning the Department's practice in this area as well. Indeed, it appears that Commerce adopted its methodology of first focusing on certifications in light of recent case law. Moreover, since the filing of GRT's 56.2 motion, the Court has issued two decisions calling this methodology into question.

In *Risen Energy Co. v. United States*, this Court once more remanded to Commerce, ordering that the Department attempt to verify one of the respondent's submissions with respect to alleged non-use of the EBC program. No. 20-03912, slip op. 23-48, 2023 Ct. Intl. Trade LEXIS 52 (Apr. 11, 2023). Namely, the Court in *Risen* recently ruled that the Department's finding that the respondent provided insufficient information in order to find non-use of the EBC program was unsupported by substantial evidence. According to the Court, "Commerce cannot reasonably conclude that Risen did not supply information that rendered the missing data from the GOC irrelevant and essentially eliminated any gap in the record" when the respondent provided certifications from customers constituting roughly 95 percent of its POR sales. *Id.* at *5, *13. This Court ruled similarly in *Dalian Meisen Woodworking Co., v. United States*, No. 20-00110, slip op.

23-57, 2023 Ct. Intl. Trade LEXIS 70 at *8, 27 (Apr. 23, 2023) (finding the Department's Remand Results unsupported by substantial evidence when Commerce did not verify a respondent's submissions providing information for fifteen of its twenty-seven unaffiliated U.S. customers, which constituted approximately 90% of its U.S. sales by volume). It is apparent that case law in this space is still developing, and the Court continues to question the Department's changing practice in this area. As of today, exactly what a respondent is required to submit in order to support a claim of non-use of the EBC program remains in flux. In light of this rapidly evolving area, GRT respectfully requests that this Court finds that the exhaustion doctrine would not apply in this instance.

If the Court determines that GRT did not exhaust its certification argument during the administrative process and that no exception applies, the Court should nonetheless exercise its discretion to still consider the argument. *See Zhaoqing Tifo New Fibre Co. v. United States,* 60 F. Supp. 3d 1328, 1343 n.19 (Ct. Int'l Trade 2015) (explaining that application of the doctrine of exhaustion is within the Court's "sound discretion"). As discussed above, this is a rapidly developing area of CIT jurisprudence, and it appears the Department continues to modify its practice in light of additional CIT cases being published. In any event, it is not clear that GRT's argument would have impacted the outcome of Commerce's decision anyway. *See* IDM at 16 ("[W]e continue to find that the GOC is the interested party that holds the critical information pertaining to this program . . . Without this information and without the cooperation of the GOC, claims of non-use by the respondent companies and *even non-use certifications submitted by the respondents' U.S. customers are of little value.*") (emphasis added).

12

### 2. GRT brought forth the argument that Commerce did not properly determine if a benefit was conferred.

As it did with GRT's argument that it provided a non-use certification for CTRC, the Government also contends that GRT's argument that Commerce violated 19 U.S.C. § 1677(5)(B) by failing to determine if a benefit was conferred was not exhausted. Def.'s Resp. 24. However, GRT's case brief explicitly argues that "the Department should . . . determine that GRT did not benefit from the EBC program." GRT Case Br. 7. Despite GRT's arguments in its case brief, it is apparent that in the final IDM Commerce violated 19 U.S.C. § 1677(5)(B) by failing to determine if a benefit was conferred on GRT. This Court should therefore waive any failure to exhaust this argument by GRT.

Additionally, the "question of law" exception to the exhaustion doctrine would apply to the facts at hand as well. Defendant relies on a case from 1995 in order to support the proposition that the pure legal exception does not generally apply to the Department's antidumping and countervailing duty determinations. Def.'s Resp. 24 (citing *Aramide Maatschappij V.o.F. v. United States*, 901 F. Supp. 353, 358 n.4 (Ct. Int'l. Trade 1995)). However, more recent cases have made reference to and applied this exception. *See Peer Bearing Company-Changshan v. United States*, 36 C.I.T. 1700, 1728 (2012) ("An exception to the exhaustion requirement has been recognized when the issue presented is a 'pure legal question.' That exception is applicable here.") (citations omitted); *see also ABB Inc.*, 190 F. Supp. 3d at 1185 n.35 (listing the pure law exception as one of the exceptions for failing to exhaust administrative remedies). The question of "pure law" in the *Peer Bearings* case was centered around requirements Commerce was obligated to follow under the Tariff Act, specifically 19 U.S.C. § 1677b(c)(1). 36 C.I.T. at 1727 ("The only question to be resolved is whether, on these uncontested facts, Commerce acted inconsistently with 19 U.S.C. § 1677b(c)(1)"). Here, in similar fashion, GRT's arguments that Commerce violated

13

19 U.S.C. § 1677(5)(B) were also a question of pure law. No additional factual points were raised that were not before Commerce in the underlying administrative review.

**C.    Even if the Court finds that GRT failed to exhaust its administrative remedies, the Court should nonetheless find that the Department's findings were unsupported by substantial evidence.**

Finally, even if the Court finds that GRT failed to exhaust its administrative remedies, the Court should nonetheless remand to Commerce because the Department's findings were unsupported by substantial evidence and otherwise contrary to law, as discussed in GRT's 56.2 Motion. GRT Mot. 26–29.

## CONCLUSION

For the forgoing reasons, GRT respectfully requests this court to remand this case to Commerce with the appropriate instructions.

                Respectfully submitted,

                /s/ Kelsey Clinton

                Daniel Cannistra
                Weronika Bukowski
                Kelsey Clinton

                Crowell & Moring LLP
                1001 Pennsylvania Avenue, NW
                Washington, DC 20004
                Tel: (202) 624-2500
                Email:  dcannistra@crowell.com

                *Counsel to Plaintiff*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| Qingdao Ge Rui Da Rubber Co., Ltd., <br><br> Plaintiff, <br><br> v. <br><br> United States, <br><br> Defendant, <br><br> and <br><br> United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, <br><br> Defendant-Intervenor. | Court No. 22-00229 |

**CERTIFICATE OF COMPLIANCE**

Pursuant to U.S. Court of International Trade Rule 2(b)(2) of the Court's Standard Chambers Procedures, undersigned counsel for Plaintiff, certifies this brief complies with the Court's type-volume limitation rules.  This brief contains no more than 4,360 words and therefore does not exceed 5,000 words.  This brief also complies with all typeface and margin requirements.

Respectfully submitted,

/s/ Kelsey Clinton
Kelsey Clinton

*Counsel to Plaintiff*