Slip Op. 23-153

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| QINGDAO GE RUI DA RUBBER CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> Defendant-Intervenor. | Before: Mark A. Barnett, Chief Judge <br> Court No. 22-00229 |

## <u>OPINION</u>

[Sustaining the U.S. Department of Commerce's final results in the 2020 administrative review of the countervailing duty investigation of truck and bus tires from the People's Republic of China]

Dated: October 20, 2023

Weronika Bukowski, Crowell & Moring, LLP, of Washington, DC, argued for Plaintiff. With her on the brief were Daniel Cannistra and Kelsey Clinton.

Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant. With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and L. Misha Preheim, Assistant Director. Of counsel on the brief was Ashlande Gelin, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Christopher Cloutier</u>, Schagrin Associates, of Washington, DC, argued for Defendant-Intervenor.  With him on the brief were <u>Roger B. Schagrin</u> and <u>Nicholas J. Birch</u>.

Barnett, Chief Judge:  This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") final results in the second administrative review of the countervailing duty ("CVD") order on truck and bus tires from the People's Republic of China ("China") for the period of review ("POR") from January 1, 2020, through December 31, 2020.  *See Truck and Bus Tires From the People's Republic of China*, 87 Fed. Reg. 39,063 (Dep't Commerce June 30, 2022) (final results of [CVD] admin. review; 2020) ("*Final Results*"),[1] ECF No. 19-5, and accompanying Issues and Decision Mem., C-570-041 ("I&D Mem.") (June 24, 2022), ECF No. 19-4.[2]

Plaintiff Qingdao Ge Rui Da Rubber Co., Ltd. ("Plaintiff" or "GRT") challenges Commerce's determination to use facts available with an adverse inference ("AFA") in assigning Plaintiff a 1.78 percent CVD rate under the Export Buyer's Credit Program ("EBCP").  *See* Mem. in Supp. of Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("Pl.'s Mem."), ECF No. 28; Pl.'s Reply Br. in Supp. of Rule 56.2 Mot. for J. on the Agency R. ("Pl.'s Reply"), ECF No. 38.

---

[1] The *Final Results* were amended to correct a ministerial error that does not affect the court's review of this matter.  *See Truck and Bus Tires From the People's Republic of China*, 87 Fed. Reg. 52,364 (Dep't Commerce Aug. 25, 2022) (am. final results of [CVD] admin. review; 2020), ECF No. 19-6.

[2] The administrative record filed in connection with the *Final Results* is divided into a Public Administrative Record ("PR"), ECF No. 19-2, and a Confidential Administrative Record ("CR"), ECF No. 19-3.  Parties filed joint appendices containing record documents cited in their briefs.  Public J.A., ECF No. 42; Conf. J.A. ("CJA"), ECF No. 41.  Citations are to the CJA unless stated otherwise.

Defendant United States ("Defendant") filed a response in support of

Commerce's use of AFA with respect to the EBCP.  Def.'s Resp. to Pl.'s Mot. for J. on

the Agency R. ("Def.'s Resp."), ECF No. 32.  Defendant primarily contends that GRT did

not exhaust its arguments at the administrative level, as it was required to do.  *Id.* at 13–

15.  Defendant-Intervenor United Steel, Paper and Forestry, Rubber, Manufacturing,

Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC

concurred with and adopted by reference Defendant's arguments.  Resp. Br. of Def.-Int.

in Opp'n to Pl.'s Mot. for J. on the Agency R., ECF No. 33.

For the reasons herein, the court sustains the *Final Results*.

## BACKGROUND

On April 1, 2021, Commerce initiated the second administrative review of the

CVD order on truck and bus tires from China.  *Initiation of Antidumping and [CVD]*

*Admin. Reviews*, 86 Fed. Reg. 17,124 (Dep't Commerce Apr. 1, 2021).  Commerce

selected Plaintiff as a mandatory respondent.  *See* Truck and Bus Tires from the

People's Republic of China: Resp't Selection in [CVD] Admin. Review for 2020 (May 10,

2021) at 1, PR 39, CR 9, CJA Tab 1.  Plaintiff is a producer and exporter of subject

merchandise and is majority-owned by Cooper Tire & Rubber Company ("CTRC"), a

U.S. importer.  *See Trucks and Tires From The People's Republic Of China*/GRT Resp.

To Initial Questionnaire (July 14, 2021) ("GRT IQR") at III-6–III-7, PR 73-74, CR 38-47,

CJA Tab 5.  As part of its review, Commerce issued questionnaires to Plaintiff and the

Government of China ("the GOC") requesting, among other things, information related

to the EBCP, a state-subsidized loan program administered by the state-owned Export-

Import Bank of China ("Ex-Im Bank").  *See* Second Admin. Review of Truck and Bus

Tires from the People's Republic of China: [CVD] Questionnaire (May 24, 2021) ("Initial

Questionnaire"), PR 41, CJA Tab 2.

GRT's initial questionnaire response addressed the EBCP.  GRT provided a

customer list showing a single U.S. customer, CTRC.  *See* GRT IQR at III-26, Ex. 16.

GRT asserted "that none of its customers applied for, used, or benefited from the

alleged program during the POR."  *Id.* at III-27.  GRT further stated that it was "never

contacted by any of its customers to provide any of the information that is required to

obtain an export buyer's credit" and it was thus "impossible that any . . . customers

could have possibly received export buyer's credit" under the EBCP process.  *Id.*  Jack

Jay McCracken, Vice President, Assistant General Counsel & Assistant Secretary for

CTRC and GRT, certified, as required by Commerce regulation, that the responses

were "accurate and complete" and "subject to verification."  *Id.* at Company Certification.

Meanwhile, Commerce requested that the GOC provide: (1) a copy of the

September 6, 2016 GOC 7th Supplemental Response to the CVD Investigation of

Certain Amorphous Silica Fabric from China ("EBCP Supplemental Questionnaire

Response"), (2) original and translated copies of any law, regulations, or other

governing documents cited in the EBCP Supplemental Questionnaire Response, and

(3) a list of all partner banks involved in the disbursement of funds under the EBCP.

Initial Questionnaire at II-23.  The GOC declined to provide any of these documents,

stating that the EBCP Supplemental Questionnaire Response was not relevant and that

Commerce's request for partner banks was broad and not necessary.  *See GOC Initial*

*Questionnaire Resp.* in the 2020 Admin. Review of the [CVD] Order on Truck and Bus

Tires [ ] from the People's Republic of China (C-570-041) (July 14, 2021) ("GOC IQR")

at 107–09, PR 65-72, CR 29-37, CJA Tab 4.

      Commerce also requested that the GOC provide a list of each respondent's

customers that had outstanding EBCP loans and, if no customers used the EBCP, a

detailed explanation of the steps the GOC took to determine such non-use.  *See* Initial

Questionnaire at II-23.  The GOC responded that it obtained a list of customers from the

respondents, it provided those customer lists to the Ex-Im Bank, and the Ex-Im Bank

searched its database to confirm that the listed customers did not use the EBCP.  GOC

IQR at 109–12.  The GOC directed Commerce to a purported screenshot of the Ex-Im

Bank's database search results.  *Id.* at 109 (citing Ex. II.F.3).  The GOC further stated

its understanding that "Respondents are providing in their own questionnaire responses

affidavits from their US customers to the effect that none of the customers obtained any

Export Buyers Credits from the EX-IM Bank."  *Id.* at 110.

      Commerce issued a supplemental questionnaire to the GOC again requesting (1)

the EBCP Supplemental Questionnaire Response, (2) the 2013 Administrative

Measures revisions to the EBCP, and (3) a list of partner banks involved in the

disbursement of funds under EBCP.  *See GOC Suppl. Questionnaire Resp.* in the 2020

Admin. Review of the [CVD] Order on Truck and Bus Tires [ ] from the People's

Republic of China (C-570-041) (Nov. 22, 2021) at Questions and Answers 14–16, PR

90, CR 52, CJA Tab 7.  The GOC again refused to provide this requested information,

claiming that the 2013 Administrative Measures revisions were "internal to the bank,

non-public, and not available for release" and that the EBCP Supplemental

Questionnaire Response and list of partner banks were not necessary to confirm or

verify use of the EBCP.  *Id.*

On March 8, 2022, Commerce published its preliminary results.  *Truck and Bus*

*Tires From the People's Republic of China*, 87 Fed. Reg. 12,929 (Dep't Commerce Mar.

8, 2022) (prelim. results of [CVD] admin. review) ("*Preliminary Results*"); *see* Decision

Mem. for the Prelim. Results of [CVD] Admin. Review, Recission in Part and Prelim.

Intent to Rescind in Part; 2020: Truck and Bus Tires from the People's Republic of

China ("Prelim. Mem."), C-570-041, (Feb. 25, 2022), PR 264, CJA Tab 13.  Commerce

preliminarily found that the use of AFA was warranted in determining the

countervailability of the EBCP because the GOC failed to provide requested information

necessary for the agency to analyze the EBCP and verify that GRT's customers had not

used the program.  Prelim. Mem. at 9–10.  Furthermore, Commerce found that GRT

failed to provide evidence or declarations from its U.S. customers demonstrating non-

use of the EBCP.  *Id.* at 10.

Plaintiff and the GOC submitted case briefs contesting Commerce's preliminary

results.  As relevant here, GRT argued, "[i]n summary, [that] the GOC fully cooperated

to the best of its ability to provide all the necessary information requested by

[Commerce]."  Truck and Bus Tires from the People's Republic of China: *GRT's Case*

*Br.* (Apr. 7, 2022) ("GRT Case Br.") at 6, PR 274, CR 121, CJA Tab 17.  GRT explained

that the GOC's confirmation of non-use and provision of screenshots from a search

query sufficiently verified GRT's own questionnaire response asserting customer non-

use.  *Id.* at 4–5.  As relevant here, while GRT maintained that it had "confirmed," "further

confirmed," and "stated" that its customers did not apply for, use, or benefit from the

EBCP during the POR, GRT did not assert or suggest that its customers had made

such representations to Commerce.  *Id.* at 5.

For its part, the GOC argued to Commerce that the purportedly missing

information had "no bearing on establishing *usage* of the program or the ability to verify

its usage."  *GOC Admin. Case Br.* -- Second Admin. Review of the [CVD] Order on

Truck and Bus Tires from the People's Republic of China (C-570-041) (Apr. 7, 2022)

("GOC Case Br.") at 14, PR 273, CR 120, CJA Tab 16.  The GOC also averred that "the

respondents provided statements of non-use in their initial responses after confirmation

with their U.S. customers and submission of customer declarations."  *Id.* at 17 (citing

only to the other mandatory respondent's Initial Questionnaire Response).

On June 30, 2022, Commerce published the *Final Results*.  Commerce again

found that it was unable to verify non-use of the EBCP by GRT and CTRC based on the

GOC's refusal to provide requested information and GRT's failure to provide non-use

certifications.  I&D Mem. at 16–28.  Commerce thus continued to use AFA.  *Id.* at 17.

GRT challenges the *Final Results*, arguing that Commerce's use of AFA was

unsupported by substantial evidence because the agency relied on the lack of non-use

certifications from GRT's U.S. customers.  *See* Pl.'s Mem. at 15–17.  According to GRT,

the assistant general counsel's certification accompanying the questionnaire response

constituted a customer non-use certification, and Commerce had to rely on that record

evidence rather than using AFA.  *See id.*

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c) (2018).[3] The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

### LEGAL FRAMEWORK

During a CVD investigation or administrative review, Commerce solicits information from the foreign government alleged to have conferred the subsidy.  *See Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1369–70 (Fed. Cir. 2014).  When an interested party, such as a foreign government, "withholds information" requested by Commerce, "significantly impedes a proceeding," "fails to provide [ ] information by the deadlines for submission of the information," or provides information that cannot be verified pursuant to 19 U.S.C. § 1677m(i), Commerce shall use the "facts otherwise available" in making its determination.  19 U.S.C. § 1677e(a)(2).  Additionally, if Commerce determines that a party "has failed to cooperate by not acting to the best of its ability to comply with a request for information," the agency "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b)(1)(A).

---

[3] Further citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code.  All references to the U.S. Code are to the 2018 edition unless otherwise specified.

    In reviewing Commerce's determinations, this court "shall, where appropriate,

require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).

Administrative exhaustion commonly requires parties to raise all arguments in

administrative briefs before presenting them to this court.  *Dorbest Ltd. v. United States*,

604 F.3d 1363, 1375 (Fed. Cir. 2010); *see also* 19 C.F.R. § 351.309(c)(2) (stating

Commerce's requirement that parties raise all arguments in case briefs before the

agency).  Administrative exhaustion "protect[s] administrative agency authority and

promot[es] judicial efficiency."  *Corus Staal BV v. United States*, 502 F.3d 1370, 1379

(Fed. Cir. 2007) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

    This court retains discretion to permit exceptions to the exhaustion requirement.

*ABB, Inc. v. United States*, 920 F.3d 811, 818 (Fed. Cir. 2019).  Previously identified

exceptions include situations in which: raising an argument at the administrative level

would have been futile; an intervening judicial interpretation would have impacted the

agency's actions; a plaintiff raises a pure question of law; a plaintiff had no reason to

believe the agency would not follow established precedent, *ABB Inc. v. United States*,

40 CIT __, __, 190 F. Supp. 3d 1159, 1180 n.35 (2016); or "the agency in fact

thoroughly considered the issue in question," *Pakfood Public Co. v. United States*,

34 CIT 1122, 1145, 724 F. Supp. 2d 1327, 1351 (2010) (citations omitted).

<center>

**DISCUSSION**

</center>

    Plaintiff argues that Commerce's findings are contrary to law and unsupported by

substantial evidence.  Specifically, GRT argues that, because the official who certified

GRT's response that no customers used the EBCP was an official of both GRT and

CRTC, "as a practical matter" GRT provided a non-use certification from its only customer and Commerce failed to take account of it.  Pl.'s Mem. at 16–17.  Plaintiff also contends that Commerce failed to determine whether a benefit was conferred upon GRT or CTRC, *id.* at 28, and failed to provide GRT an opportunity to verify the evidence on record, *id.* at 29.  Defendant counters that GRT failed to present these arguments at the administrative level and, thus, the court should not consider these arguments. Def.'s Resp. at 13–15, 24–25.  Plaintiff responds that it exhausted its remedies or was excused from doing so, and that Commerce's determination is not otherwise supported by substantial evidence.  Pl.'s Reply at 7–13.

In support of its argument that it exhausted its administrative remedies, Plaintiff points to the statement in its administrative case brief arguing that Commerce "must accept the *certified* record evidence from both the GOC and GRT that neither GRT nor any of its customers used the [EBCP]."  Pl.'s Reply at 8 (quoting GRT Case Br. at 6–7). However, GRT's reference to the certified record was preceded by discussion of the record evidence from the GOC's response.  GRT Case Br. at 4–6.  GRT asserted that it had "confirmed" its customers' non-use, but GRT failed to identify any purported customer non-use certification or, indeed, any statement from its customer, or otherwise explain that it sought to have Commerce consider its questionnaire response, combined with the certification of accuracy required by 19 C.F.R. § 351.303(g), as the equivalent of a customer non-use certification.  *See id.* at 5.  "[M]erely mentioning a broad issue" like certified record evidence, without more, is inadequate to exhaust remedies if it is insufficient to "alert[] the agency to the argument with reasonable clarity" and provide

the agency an opportunity to address it.  *Timken Co. v. United States*, 26 CIT 434, 460,

201 F. Supp. 2d 1316, 1340–41 (2002) (citing *Hormel v. Helvering*, 312 U.S. 552 (1941)

and *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990)).

      Moreover, Commerce expressly stated in its *Preliminary Results* that GRT "did

not provide any evidence or declarations to demonstrate its customers did not use [the

EBCP]."  Prelim. Mem. at 10.  Thus, Commerce indicated to GRT that the agency

believed that it did not have any customer non-use certifications from GRT, thereby

placing the onus on GRT to exhaust its arguments with respect to such evidence before

the agency.  This scenario is more clear than that addressed in *Boomerang Tube LLC*

*v. United States*, 856 F.3d 908, 913 (Fed. Cir. 2017), wherein the Court of Appeals for

the Federal Circuit found that Boomerang failed to exhaust its administrative remedies

when Boomerang knew information was before the agency and another party made

arguments to the agency based on that information, but Boomerang failed to argue for

its desired outcome to Commerce.  Rather than clearly and explicitly challenge this

preliminary finding and point to what GRT considered contradictory record evidence,

Plaintiff argued that Commerce should determine that GRT did not benefit from the

EBCP because the GOC fully responded to Commerce's requests and provided

screenshots from the Ex-Im Bank showing that no credits were provided to GRT or its

customers.  In GRT's view, this confirmed that its customers did not apply for, use, or

benefit from the EBCP.  GRT Case Br. at 4–5.  However, because Plaintiff's argument

before this court is distinct from that before the agency, and the agency had no

opportunity to consider, in the first instance, whether GRT's regulatory certification of

accuracy to the entirety of GRT's questionnaire response, read with that questionnaire

response, is reasonably read as a customer certification of non-use, Plaintiff failed to

exhaust its administrative remedies.

Alternatively, Plaintiff seeks to invoke various exceptions to the exhaustion

doctrine with respect to its arguments regarding non-use certification.  First, GRT

argues that exhaustion need not be required because Commerce "fully considered"

whether any of GRT's evidence constituted a non-use certification.  Pl.'s Reply at 9.

GRT claims that Commerce ultimately determined that GRT "did not provide any

evidence or declarations to demonstrate its customers did not use [the EBCP]," and,

therefore must have considered whether the questionnaire response and certification of

accuracy, in combination, constituted a non-use certification.  *Id.* at 10 (quoting I&D

Mem. at 26).  Plaintiff also relies on the GOC's assertion that respondents "provided

statements of non-use in their initial responses after confirmation with their U.S.

customers and submission of customer declarations."  *Id.* at 9 (quoting GOC Case Br. at

17).

Plaintiff's argument is unpersuasive.  Commerce concluded that GRT "did not

provide any evidence or declarations to demonstrate its customers did not use [the

EBCP]."  I&D Mem. at 26; *see also* Prelim. Mem. at 10 (stating the same).  But

Commerce drew this conclusion in the context of addressing a case brief in which GRT

failed to identify what it considered to be a customer certification of non-use.  Moreover,

while GRT seeks to rely on arguments made by the GOC, the GOC did not identify any

submission *from GRT* that would constitute a customer non-use certification and,

instead, the GOC supported its argument to Commerce with a record citation to a certification provided by the other mandatory respondent, not GRT. GOC Case Br. at 17; *see also* I&D Mem. at 26 (explaining that the other mandatory respondent "only provided a customer declaration or 'non-use certification' from one of its U.S. customers" to the agency and GRT had provided none). Moreover, the GOC made this argument after having represented to the agency that the respondents would be providing affidavits confirming non-use. GOC IQR at 110. Because nothing indicates that Commerce considered whether GRT's questionnaire response and its required certification of accuracy constituted a customer non-use certification, the court rejects GRT's invocation of this exception to the exhaustion requirement. *See Pakfood Public Co.*, 34 CIT at 1147, 724 F. Supp. 2d at 1353 (declining to excuse exhaustion when there was "no indication . . . that the agency did indeed fully consider the issue").

Next, Plaintiff argues that case law on non-use certifications has changed since GRT filed its case brief. Pl.'s Reply at 10–12. Plaintiff contends that, because of these intervening changes in the law, any failure by GRT to raise this issue before the agency should be excused. *See id*. Plaintiff is mistaken. Plaintiff seeks to litigate whether the certification of its questionnaire response by an official of both GRT and its affiliated customer was effectively a customer non-use certification. By contrast, in the cases cited by Plaintiff, it was uncontested that respondents had provided customer certifications that both directly and expressly indicated non-use of the EBCP. *See, e.g.*, *Risen Energy Co. v. United States*, Slip Op. 23-48, 2023 Ct. Int'l Trade LEXIS 52 (CIT Apr. 11, 2023) (remanding when respondent provided non-use certifications from

customers constituting about 95 percent of its sales).  Here, the agency found that GRT

provided no such customer certification.  I&D Mem. at 26.  Therefore, the court declines

to find that the identified case law represents a relevant intervening change in law that

excuses GRT from having presented its argument to Commerce in the first instance.

Plaintiff has also suggested that it would have been futile to present its argument

to Commerce because Commerce indicated that customer non-use certifications would

not have changed the decision.  Pl.'s Reply at 12.  The "narrow" exception for futility

applies when preserving an argument would require parties "to go through obviously

useless motions."  *Corus Staal BV*, 502 F.3d at 1379 (quotations omitted).  Plaintiff's

speculation that presenting this argument to Commerce would have been "obviously

useless" fails because, as Plaintiff acknowledges, Commerce's approach to analyzing

customer non-use certifications was already undergoing change pursuant to court

review in other cases.  *See, e.g.*, *Guizhou Tyre Co., Ltd. v. United States*, 44 CIT __,

__, 447 F. Supp. 3d 1373, 1374 (2020) (sustaining redetermination after remand when

Commerce declined to countervail EBCP).

GRT also claims that Commerce erred because it should have determined that

GRT and CRTC did not benefit from the EBCP.  Pl.'s Reply at 13.  GRT's argument of

no benefit, however, is premised on its claimed non-use of the program, a factual claim

that Commerce rejected because of the lack of evidence to support non-use.  *See* I&D

Mem. at 17, 26.  Moreover, contrary to Plaintiff's argument, this issue is not a pure

question of law.  *See* Pl.'s Reply at 13–14.  While an issue involving a pure question of

law may be excused from exhaustion, Plaintiff's argument "must be of purely legal

nature . . . requir[ing] neither further agency involvement nor additional fact finding or opening up the record."  *Thai I-Mei Frozen Foods Co. v. United States*, 31 CIT 334, 359, 477 F. Supp. 2d 1332, 1354 (2007).  Here, Plaintiff presents a mixed question of fact and law in which the factual predicate for the legal argument is in doubt and Plaintiff failed to make the factual argument to Commerce.

Finally, Plaintiff argues that even if GRT failed to exhaust its administrative remedies, Commerce's findings are still unsupported by substantial evidence.  *See* Pl.'s Reply at 14 (citing Pl.'s Mem. at 26–29).  First, Plaintiff argues that Commerce failed to make an *affirmative* finding that GRT benefited from the EBCP, instead concluding that no evidence established that GRT *did not* benefit from the program.  Pl.'s Mem. at 28.  This argument, like those before, was not raised at the administrative level, despite Commerce's preliminary determination containing the exact same language.  *Compare* Prelim. Mem. at 10, *with* I&D Mem. at 26 ("GRT . . . did not provide any evidence or declarations to demonstrate its customers did not use this program.").  Moreover, Commerce did go on to "find that GRT . . . used and benefited from [the EBCP]."  I&D Mem. at 27.  Second, Plaintiff contends that Commerce erred by not verifying GRT's assertions of non-use.  Pl.'s Mem. at 29.  Again, Commerce preliminarily determined that GRT did not provide any non-use certifications from its U.S. customers, Prelim. Mem. at 10, impliedly finding that it would have had nothing to verify.  GRT failed to identify any non-use certifications to the agency, and, in the Final Results, Commerce reasonably explained that it had nothing to verify, I&D Mem. at 17.

Court No. 22-00229                                                    Page 16

<center>CONCLUSION</center>

Plaintiff was required to raise all arguments that it believed to be relevant to the

agency's final determination in its case brief to the agency.  *See* 19 C.F.R. §

351.309(c)(2).  Because Plaintiff failed to raise these issues below, the court is unable

to review Commerce's findings with respect to these arguments.  Plaintiff's motion for

judgment on the agency record is denied and the court will sustain Commerce's *Final*

*Results*.  Judgment will enter accordingly.

<div align="right">
/s/      Mark A. Barnett____<br>
Mark A. Barnett, Chief Judge
</div>

Dated: <u>October 20, 2023_____</u><br>
      New York, New York